DUNN v. MILLER, *Plaintiff in Error*.

1. **Presumption of Deed.** A deed will not be presumed where there is a chain of title apparently perfect, and upon which the possessor appears to have relied to sustain his possession.

   Thus, where plaintiff in ejectment at the trial in 1877 offered in evidence deeds constituting a complete chain of title, including a deed from one L. dated in 1817, and in addition showed possession in himself and those under whom he claimed from 1841 or 1842 down to 1872, and defendant, in rebuttal, showed an outstanding title in one G. under a conveyance from L. dated in 1808; *Held*, that there was no ground to presume a re-conveyance from G. to L. between 1808 and 1817.

2. **Husband and Wife:** WIFE'S REAL ESTATE. Prior to the 22nd of June, 1821, there was no law in the State or Territory of Missouri that authorized the wife or the husband, or both of them together, to convey the wife's real estate during the marriage.

3. **Ejectment:** WRIT OF POSSESSION. In contemplation of law the enforcement of a writ of possession in an action of ejectment puts an end to the adverse possession of defendant as of the day of the institution of the suit.

4. **Ejectment.** Plaintiff in ejectment cannot recover upon a prior possession of less than ten years since the emanation of the legal title from the United States government, when defendant's present possession is under claim and color of title; especially if he obtained possession from the plaintiff by a former action of ejectment.

5. ———: OUTSTANDING TITLE: ADVERSE POSSESSION. Adverse possession will avail nothing as against a good outstanding title unless it has been held for the statutory period.

*Appeal from St. Louis Court of Appeals.*

REVERSED.

*D. T. Jewett* for plaintiff in error.

The judgment in the former suit is conclusive that in May, 1872, the right of possession was in Miller, and that it continued in him till at least after judgment, because our statute of ejectment provides that if the plaintiff's right of possession expires before judgment, it may be pleaded, and he shall only have judgment for costs and damages to that time. It also settles the question that Dunn cannot recover in this action on any *presumption* of title arising from the fact of possession before May, 1872. *Whitney v. Wright*, 15 Wend. 179; *Jackson v. Rightmyre*, 16 John. 325; *Arnold v. Arnold*, 17 Pick. 4; *Jackson v. Tuttle*, 9 Cow. 234; *Jackson v. Walker*, 7 Cow. 642; *Beebe v. Elliott*, 4 Barb. 457; *Marshall v. Shafter*, 32 Cal. 185, 196. It also results from that judgment that Dunn had no possession to count after May, 1872. There was no statute in Missouri till 1821 authorizing a husband and wife to convey the wife's land. Prior to the adoption of the common law in 1816, the Spanish law was in force in the territory of Missouri. There never was any Spanish law, that I can find, that authorized the wife alone, or the husband and wife alone, or the husband and wife together to convey the " dote " or the " arras," that is, the lands given by the wife to the husband, or the husband to the wife, on marriage. Neither did the common law when it came into force authorize it. Under that system a married woman's property could only be conveyed by fine and recovery, a process in court. 3 Washb. Real Prop., p. 217, § 17; Bouv. Law Dic., title " Fine;" *Garnier v. Barry*, 28 Mo. 345. A conveyance will not be presumed unless it would have been lawful if made. It cannot, therefore, be presumed in this case. Moreover, if Lucas was alive in 1817, he was tenant for life of the New Madrid land, had the right of possession and such title, as our courts have repeatedly decided, as would maintain or defend our action of ejectment, and as

could be sold and give his grantee the same rights he had. That a man holding such a title conveys a fee, is no fact upon which to found a presumption of the existence of a deed to him of the fee. *Jackson v. Mancius*, 2 Wend. 357. There was no occasion for her to join in a deed to his interest in the land. All that was done would naturally be done without her. She could not have prevented it. No presumptions can be made against the rights of a married woman ; her hands are tied. *Meegan v. Boyle*, 19 How. 146, 150. She could not prevent her husband selling the land and putting the grantee into possession; for, under all laws, he had the right of possession, and could transfer that, if he could not the fee even when joining with her. There is nothing in this case to show that Mrs. Lucas ever sanctioned, or had any knowledge of this pretended sale, or of any exchange of land. No presumption from knowledge and silence can be drawn. But, further : The presumption of a deed can be invoked only by one who holds under the title to be made out by the deed, the existence of which is to be presumed. The lost deed must be a part of his title. *Dessaunier v. Murphy*, 27 Mo. 51. There is no case where a party has been allowed to presume a deed to destroy his opponent's title or a chain of title put in by his opponent, when the party invoking the presumption does not ask it in his chain of title.

*Henry M. Bryan* for defendant in error.

Upon these grounds : thirty years of continuous, peaceable possession ; purchase for full consideration of the only title of record in St. Louis county, emanating from the person whom the United States recognized as the true owner of the New Madrid land, and from whom it received a deed reciting the fact and evidence of such ownership; the expenditure of money in good faith in constructing a home and making other improvements; the payment of taxes; the fact that the land in controversy is but parcel of a large

tract of land in the immediate vicinity of the city of St. Louis, that up to 1872 it had been claimed and possessed under title from Chas. Lucas alone, subdivided into city lots and blocks, bought and sold and built upon in undoubting confidence in that title, with no adverse claim on the part of Sarah Lucas for fifty years, or at least with no notice (actual or constructive) of that claim by any of the occupants of the John Brooks survey, we ask the court to presume a deed from Sarah Lucas; on the ground, in brief, that the existence of the deed is consistent with all the facts and circumstances of this case, and inconsistent with none. *Dominy v. Miller*, 33 Barb. 386; *Mayor v. Horner*, Cowp. 102; *Eldridge v. Knott*, Cowp. 214; *Archer v. Saddler*, 2 Hen. & Mun. 370; *Stillman v. White Rock, etc., Co.*, 3 Wood. & M. 541; *Bedle & Beard's case*, 12 Co. 5; *Hillary v. Waller*, 12 Ves. 239; *Fishar v. Prosser*, Cowp. 217; *Prevost v. Gratz*, 6 Wheat. 481, 504; *Ricard v. Williams*, 7 Wheat. 109; *Jackson v. McCall*, 10 John. 380; *Jackson v. Pratt*, 10 John. 381; *Jackson v. Lunn*, 3 John. Cas. 109; *Beall v. Lynn*, 6 Harr. & J. 361; *Rhode Island v. Massachusetts*, 4 How. 639; *Piatt v. Vattier*, 9 Pet. 405; *Ewing v. Burnet*, 11 Pet. 41; *Newman v. Studley*, 5 Mo. 295; Starkie Evidence, part 4, 12, 27, 28; *McNair v. Hunt*, 5 Mo. 300; *McDonald v. Schneider*, 27 Mo. 411; *Allston v. Saunders*, 1 Bay (S. C.) 26; *Jackson v. Miller*, 6 Wend. 228; *Bealey v. Shaw*, 6 East 213; *Melvin v. Proprietors*, 16 Pick. 137; *s. c.*, 17 Pick. 255; *Thomson v. Peake*, 7 Rich. (S. C.) 353; *Smith v. Asbell*, 2 Strobh. 141; *Gilchrist v. McGee*, 9 Yerg. 455; *Williams v. Donell*, 2 Head 695; *Nixon v. Carco*, 28 Miss. 414; *Wallace v. Fletcher*, 30 N. H. 434; *Caruthers v. Eldridge*, 12 Gratt. 670; *Mason v. McLean*, 13 Ired. 262; *McLeod v. Rogers*, 2 Rich. 19.

*W. H. Clopton* also for defendant in error.

In *Whitney v. Wright*, 15 Wend. 179, relied on by defendant, the former recovery had been acquiesced in for

thirteen years, and the prior possession was without evidence of title. In *Jackson v. Rightmyre*, it was held that a presumption founded on a prior possession—a mere naked possession—perished with the loss of that possession by judgment and execution eighteen years before. These cases hold that an entry under judgment destroys presumptions of title acquired by possession merely—that transmutation of title accomplished by mere entry and adverse possession for a long period, defined in *Nelson v. Brodhack*, 44 Mo. 596; *Merchants' Bank v. Evans*, 51 Mo. 335; *Shepley v. Cowan*, 52 Mo. 559; *Barry v. Otto*, 56 Mo. 177; *Ridgeway v. Holliday*, 59 Mo. 444. These cases held that ten years' possession will not only extinguish the true owner's title, but will confer it upon the adverse occupant. It is the presumption of that kind of title which the cases relied on by defendant hold to be extinguished by an entry under judgment. I think the principle of those cases is that the adverse occupant had abandoned the rights he had acquired by limitation. An examination of the cases will show that a long time elapsed between the evictions and the new suits. The presumption invoked by plaintiff was a presumption of grant; that Sarah Lucas (or Graham) conveyed to Charles Lucas between the date of the marriage contract, to-wit: December 8th, 1808, and the date of the deed by Charles Lucas to Tanner, November 5th, 1816. The possession under Charles Lucas cannot be explained, except by the presumption of such a deed. There is absolutely nothing tending to rebut that presumption, except the deed from Sarah Lucas to Gillespie purporting to have been made in 1821, recorded 1872. Defendant refused to introduce that deed although he had the same proofs as to its execution, on which it was admitted in *Miller v. Dunn*, but falls back on his entry under execution and says it extinguished the presumption of a grant from Sarah Graham, or Sarah Lucas, to Charles Lucas.

RAY, J.—This is an action of ejectment to recover a

tract of land included in United States survey 2541, which was made under New Madrid certificate No. 164 in the name of John Brooks or his legal representative. The land in question, as well as the parties to the action, are the same as those involved in the case of *Miller v. Dunn*, 62 Mo. 216. In this suit, as in the former action, both parties claim under Charles Lucas as the common source of title. A jury having been waived, the cause was tried by the court.

In this action, the plaintiff, after introducing evidence tending to show that John Brooks was the original claimant and owner of the New Madrid land in question, offered in evidence a deed for said land from said Brooks to said Charles Lucas, dated in 1807. He next offered a conveyance from said Lucas to James Tanner, bearing date 1st of January, 1817, and then proceeded to put in evidence what, upon its face, purported to be a formal, regular and unbroken chain of paper title, transferring and conveying to himself whatever title said Lucas, the common grantor, may have had to said lands at the date of his deed to said Tanner; the various conveyances thus offered all being of record in the proper office. The plaintiff then proceeded to show that he, and those under whom he claimed, had been in the actual adverse possession of the land, claiming the same under the chain of title thus put in evidence, from 1841 or 1842 up to May, 1872—the time at which the original suit of *Miller v. Dunn*, *supra*, was commenced, and under which, by due judgment and process of law, the said Dunn was turned out and the said Miller put in the possession of said land at the termination thereof in April, 1876. It also appeared that no person had ever been in the actual possession of said land prior to 1841 or 1842, when Gay first took the possession. The plaintiff also put in evidence the act of Congress of June 30th, 1864, releasing and transferring the legal title to said land to the said John Brooks, or his legal representative. Here the plaintiff rested.

Such in substance was the chain of title put in evidence by the plaintiff, and under which he claimed that he had a perfect paper title to the land in controversy. There was no pretence or intimation that there was any broken link or lost deed in his chain of title necessary to make it valid and complete. He also claimed that the title thus put in evidence, and on which he rested, constituted him, under the congressional grant aforesaid, the legal representative of John Brooks, and as such the owner of the legal title.

At the close of the plaintiff's testimony, the defendant Miller, by way of defense, first put in evidence a deed from the said Charles Lucas to Sarah Graham, bearing date the 8th day of December, 1808, and conveying the lands in controversy to the said Sarah Graham, in contemplation of a marriage between said parties thereto shortly thereafter to take place. This marriage settlement was also duly recorded in the proper office on the 29th day of April, 1809. The defendant next offered evidence of the subsequent marriage of said Lucas and Graham, as contemplated by said deed, and also of the death of the said husband, Lucas, sometime prior to 1820. The defendant then put in evidence the entire record of the prior suit of *Miller v. Dunn*, including all the proof and title papers relied on by both parties to said action, together with the final judgment rendered therein in favor of said Miller and against said Dunn, as well as the execution in said cause, by and under which the said Dunn was turned out and the said Miller was put in the possession of the premises sued for in April, 1876, and the further fact that he had so remained in possession of said land, claiming thereunder, ever since and up to the time of the institution of this suit in 1877. In the former suit, Miller, the plaintiff therein, put in evidence a deed from Sarah Lucas to A. P. Gillespie, dated in March, 1821, and recorded in February, 1872, and then traced title thereunder to himself. In this suit said Miller did not offer said deed, or the title traced there-

under, except as the same appears in and as a part of said record of said suit of *Miller v. Dunn* as aforesaid. Here the defendant rested.

In rebuttal, the plaintiff gave evidence to show that on the trial of the former suit of *Miller v. Dunn* no objection was made to the Sarah Lucas deed to Gillespie on the ground that it was a forgery, and then offered to prove that said deed was a forgery, and that he did not know or have any reason to know that it was such, until after the case of *Miller v. Dunn* was decided by the circuit court, and had been appealed to the Supreme Court; but the court excluded the testimony so offered.

Whereupon the court, at the instance of the plaintiff, and against the objections of the defendant, made the following declarations of law, to-wit:

1. If the court finds from the evidence in the cause that neither Sarah Lucas nor any one as tenant of hers had been in possession of the land in controversy from June 30th, 1864, to the commencement of this suit, then no title in Sarah Lucas, or her legal representatives, can be set up as outstanding in bar of this suit.

2. The act of congress of June 30th, 1864, read in evidence by plaintiff, vested in the legal representatives of John Brooks, the legal title to the property described in the petition, if said property is included within the lines of United States survey 2,541, under certificate No. 164, and said property was at the said time of said survey open to location under said certificate No. 164. And if the court finds that John Brooks, or his legal representatives, filed his claim for his head-right of 709 arpents before the board of commissioners under the act of congress, and that said claim was confirmed by said board to John Brooks, or his legal representatives, and that John Brooks executed to Charles Lucas the deed read in evidence by plaintiff, and that Charles Lucas, claiming to be the owner of the New Madrid land, confirmed as aforesaid, caused proof to be made before the United States Recorder of

Land Titles, that said lands were materially injured by earthquakes, and did, as such owner, on the 5th day of November, 1816, execute the deed of relinquishment to the United States Government, of said lands, read in evidence by plaintiff, and in lieu thereof received New Madrid certificate No. 164, read in evidence, and that said Lucas executed the deed to James Tanner, read in evidence, and James Tanner executed the deed to McKnight and Brady, read in evidence, and that said McKnight and Brady applied to the United States Surveyor to locate for them as legal representatives of John Brooks, the said New Madrid certificate No. 164, and that said survey 2,541 was located for them upon said application under said certificate 164, and that the several deeds read in evidence by plaintiff from said McKnight and Brady and others were executed and delivered and recorded in conformity to law, and describe the property sued for, and plaintiff and those under whom he claims title had and held, prior to May 16th, 1872, for thirty years, the open, notorious, continuous, exclusive, adverse and uninterrupted possession of said land, under the chain of title introduced by him, and for more than fifty years prior to said 16th day of May, 1872, neither the defendant nor any other claimant under Sarah Lucas took any means to bring to the knowledge of plaintiff, and those under whom he claims, that they had or claimed any right, title or interest to said property under Sarah Lucas or otherwise, and that neither defendant nor any one else claiming under Sarah Lucas ever had possession of any part of the premises prior to April, 1876, nor paid taxes on the same, then the court, sitting as a jury, presumes a re-conveyance from Sarah Graham to Charles Lucas of the New Madrid land confirmed to John Brooks, between the 8th day of December, 1808, and the 5th day of November, 1816, or other valid transfer thereof between said dates, and that plaintiff is the legal representative of John Brooks to the premises in controversy, and as such, is entitled to recover in this action.

The court thereupon found for the plaintiff and ren-
dered judgment accordingly; whereupon the defendant,
after an unsuccessful motion for a new trial, by writ of
error took the case to the St. Louis court of appeals, where
the judgment of the trial court was affirmed, and the de-
fendant then appealed to this court.

As the decision of this case, from the view we have
taken of it, depends upon the propriety of the rulings in-
volved in the above instructions, or declarations of law,
given for the plaintiff, we deem it unnecessary to set out
or consider those given or refused on the part of the de-
fendant, or to make any fuller statement of the case than
as appears above, or may be suggested in the progress of
this opinion.

From the above declarations of law for the plaintiff,
it would seem that the plaintiff, after the coming in of the·
1. PRESUMPTION OF · evidence for the defendant, was forced to
DEED.          concede that, upon the face of the papers
and the case thus made, the legal title appeared to be out-
standing in Mrs. Sarah Lucas, and in order to get rid of
this fatal defect in his title, the court was asked to presume
and did presume a re-conveyance of said land from Sarah.
Graham to Charles Lucas, or other valid transfer thereof:
sometime prior to the date of the deed from Lucas to Tan-
ner in January, 1817, under which plaintiff claimed title.
This presumption so made, seems to have been the turning
point upon which the case was decided by the trial court,
and affirmed by the St. Louis court of appeals.    8 Mo.
App. 471.    Was the case at bar such a case as justified the
application of the · doctrine of presuming deeds, as laid
down in the books on this subject ?    If so, the case should
be affirmed; if not, it ought to be reversed.    The doctrine
on that subject, as laid down by Tyler on Ejectment and.
Adverse Enjoyment, 568, 569, is thus stated by that author:
" Presumptions of grants of land often arise, but never.
unless the lapse of time be so great as to create a belief
that such grants were actually made, or unless the case·

made shows that the party claiming the presumption was legally or equitably entitled to it. A conveyance will not in general be presumed where the original enjoyment was consistent with the fact of there having been none.          *
          *          Presumptions of grants are founded upon the general infirmity of human nature, the difficulty of preserving muniments of title, and the public policy of supporting long and uninterrupted possessions. They may be encountered by contrary presumptions, and can never fairly arise where all the circumstances are perfectly consistent with the non-existence of a grant." Other authorities too numerous to mention are to the same effect. Apply these principles to the case at bar, and how stands the case?

In the present case, the possession of the plaintiff, and those under whom he claims, was based upon the paper title put in evidence by him, which, upon its face, purports to be, and *prima facie* was, a perfect chain of title. Plaintiff so claimed and presented it, and rested his case upon it. His possession, and that of those under whom he claims, is perfectly consistent with the title so shown by him. There was no occasion or necessity for the presumption in question. His title, apparently, was perfect without it, and negatived all thought or suspicion of the existence or loss of the deed presumed. All the facts and circumstances of plaintiff's possession, title and claim, as put in evidence by him, are perfectly consistent with the non-existence of the re-conveyance presumed by the court, and the rule in all such cases is that no such presumption can fairly arise. This is not a case where the evidence shows a long and uninterrupted possession of land, and where no title appears on either side or otherwise; or where there is an apparent and admitted defect in plaintiff's chain of title, as presented and claimed by him. It is in such cases generally where the doctrine of presuming deeds and grants, applies and is allowable. But that is not this case. There was no charge or intimation, by plaintiff, that there was any gap or break in his title, that

called for the presumption subsequently asked and made. From the case as presented and relied on by him, it might be inferred that he had no knowledge or suspicion of the existence of the outstanding title in Mrs. Lucas, under the marriage settlement; or if he had, he impliedly repudiated its validity and force. How can he then, when confronted with this unknown or discarded outstanding title in Mrs. Lucas, turn round and ask the court to presume the existence of the re-conveyance so made by the trial court at his instance? In a case like this, will he be permitted to do it? If so, it is difficult to imagine a case where an outstanding title might not be gotten rid of in the same way. There is nothing in the doctrine of presuming deeds in proper cases, as given in the books, which warrants the ruling of the court in this instance. Such a presumption in this case would be a most unreasonable and violent presumption, and contrary to all the probabilities in the case.

Were there any doubt about the correctness of this view of the case, there is another fatal objection to the

2. HUSBAND AND WIFE: wife's real estate. presumption so made. It has been held by this court, as may be remembered, that, by the law of this State prior to the 22nd of June, 1821, it was not competent for the wife or husband, or for both of them together, to convey the wife's real estate, during the existence of the marriage. *Garnier v. Barry*, 28 Mo. 445; 1 Terr. Laws, p. 757. It was during this period, if at all, the re-conveyance presumed must have been made; and even if the re-conveyance, so presumed, had, in point of fact, been made, it would have been inoperative to transfer the title, so existing and outstanding in the wife.

To have presumed that Sarah Graham re-conveyed to Charles Lucas before their marriage, is, under the circumstances, a most violent and improbable presumption; without anything to support it, contrary to all the reasonable probabilities of the case and wholly unauthorized.

The force and effect of the marriage settlement shown

by the defendant, was to vest the title to the land in question in Mrs. Lucas, subject only to the marital rights of her husband, which terminated with his death, at some period prior to 1820.   *Miller v. Dunn*, 62 Mo. 221.

There was no actual possession of this land, under the deed from Lucas to Tanner, by any one during the life of Lucas ; or for twenty-one or twenty-two years after his death.   In the former case of *Miller v. Dunn*, *supra*, this court held, that under the decision of *Gibson v. Chouteau*, 13 Wall. 92, possession for the period named in the State statute of limitation is no bar, until the legal title passes out of the United States.   See also *McIlhinney v. Ficke*, 61 Mo. 329.   Under that ruling it must be held that no possession of plaintiff, or those under whom he claims, prior to the date of the congressional grant of June, 1864, can avail him anything in making out title by limitation.   Nor can his possession since that date confer such title, as the statutory period had not elapsed when the suit of *Miller v. Dunn* was commenced, in May, 1872, at the termination of which, in 1876, he was turned out and the defendant placed in said possession, under due process of law, issued in said cause.   The effect of said suit, and the transfer of said possession following thereunder, by due process of law, was to work, in contemplation of law, a termination of his adverse possession with the commencement of that suit in May, 1872.   It follows, therefore, that plaintiff's continued possession, between the beginning and termination of that suit, cannot in this suit avail him anything, in computing the statutory period of his adverse possession necessary to confer title.

3. EJECTMENT: writ of possession.

Neither can the plaintiff, in this action, predicate a recovery upon any prior possession he, or those under whom he claims, may have had or shown, as it appears that the defendant is in possession, under claim and color of title ; and more especially, as it also further appears that he obtained that possession from this plaintiff under judicial proceedings for that purpose, in a court of

4. EJECTMENT.

competent authority. The doctrine of allowing a recovery on prior possession, generally, is also limited to cases where the defendant is a mere intruder or trespasser, and does not extend to a case like this, where the defendant is in under claim and color of title. *Bledsoe v. Simms*, 53 Mo. 315. In cases like this, also, where the prior possessor has been turned out by an opposing claimant in judicial proceedings, all presumptions in his favor, growing out of said prior possession, if not terminated, are at least shifted in favor of his successful opponent. *Jackson v. Rightmyre*, 16 John. 325, 326; *Jackson v. Tuttle*, 9 Cow. 283; *Whitney v. Wright*, 15 Wend. 171.

The doctrine asserted in the first paragraph of said instructions is manifestly not the law. Whether Mrs. Lucas, or any one as her tenant, was in possession of the land in controversy from the 30th day of June, 1864, to the commencement of this suit, is wholly immaterial; provided, no adverse claimant during that period has held such possession for the statutory period, under such circumstances, as will confer upon him title by limitation; and as we have already seen, the possession so held by plaintiff, partly before and partly after the commencement of the suit of *Miller v. Dunn, supra*, was not such a possession. It would seem, therefore, that the title outstanding in Mrs. Lucas is a valid and subsisting title, unbarred by any adverse possession shown in this case.

5. ——— : outstanding title : adverse possession.

If it be true, as charged by the plaintiff, (the proof of which was offered, but excluded by the court,) that the deed from Mrs. Lucas to Gillespie, put in evidence by the plaintiff in the case of *Miller v. Dunn*, was in fact a forgery, it may not be amiss here to remark that whether the defendant in that suit would now be heard by appropriate proceedings for that purpose to set aside the judgment in that case, on the ground of fraud, and have the possession thereby lost restored to him, and thus do away the force and effect of that judgment, with its incidents, presump-

18—75

tions and consequences, are questions not now before the court, and about which we express no opinion.

For the reasons hereinbefore set out, the judgment of the trial court, as well as that of the St. Louis court of appeals affirming the same, are hereby reversed and the cause remanded.

*Motion for rehearing overruled.*