Argued January 21; decided March 12, 1895.

## BARRELL *v.* TITLE GUARANTEE COMPANY.

[39 Pac. 992.]

1. JUDGMENT IN EJECTMENT AS AN ESTOPPEL — CODE, §§ 316, 318, 329.— In Oregon a judgment in an action for the possession of real property, commonly called an action of ejectment, conclusively determines, from and after the date of its rendition, the estate of the defeated party in the property and his right to the possession, as between the parties to the action and those claiming from, through, or under the defeated party after the commencement of the action: Hill's Code, §§ 316, 318, 329.   The estoppel thus created does not date from the commencement of the action, but from the rendition of the judgment.

2. INTERRUPTION OF ADVERSE POSSESSION BY COMMENCEMENT OF AN ACTION — STATUTE OF LIMITATIONS.—The commencement of an ejectment action that eventually ripens into possession stops the running of the statute of limitations, regardless of whether the entry thereunder is before or after the expiration of the statutory period,— the matter that interrupts the continuity of the statute is the beginning of the action, and not the date of the final judgment, or the time of the entry.

APPEAL from Multnomah: E. D. SHATTUCK, Judge.

This is an action by Colburn Barrell against the Title Guarantee and Trust Company to recover two and three eighths acres of land situate in Multnomah County, Oregon.   The complaint contains the usual allegations.   The answer, after a specific denial of the material allegations

of the complaint, sets forth four further and separate defenses thereto, in the first of which it is alleged that the title in fee and right of possession of the premises in dispute are in the defendant. The fourth shows the following state of facts, to wit: On the twenty-ninth day November, eighteen hundred and eighty-two, one Charles E. Tilton commenced an action in the United States Circuit Court for the District of Oregon against the plaintiff herein and Aurelia J. Barrell to recover the possession of certain premises, including those in dispute. The defendants therein appeared and answered, denying the title of Tilton to said premises, and thereupon such proceedings were had that on the ninth day of July, eighteen hundred and eighty-three, it was duly considered and adjudged that Tilton was the owner in fee simple of said premises, and, as against the defendants therein, lawfully entitled to the possession thereof. The defendants thereafter appealed to the Supreme Court of the United States, and on July sixteenth, eighteen hundred and eighty-three, gave a supersedeas bond for the prosecution of such appeal. At the October term of said court for eighteen hundred and eighty-six the judgment of the lower court was affirmed, and on March twenty-eighth, eighteen hundred and eighty-seven, a mandate issued, which was duly filed and entered of record in the circuit court. Four executions were thereafter issued upon dates, respectively, September ninth, eighteen hundred and ninety, June second, eighteen hundred and ninety-one, March sixteenth, eighteen hundred and ninety-two, and June thirtieth, eighteen hundred and ninety-three. The three first were returned not served, but the fourth was duly executed by the United States marshal by putting the defendant herein in possession of the property as Tilton's successor in interest, and the defendant has ever since remained in possession thereof. The third defense simply sets up the Til-

ton judgment as an estoppel. The reply denies the defendant's ownership in fee and right of possession, but admits the allegations of the fourth further and separate defense, except that the execution of June thirtieth, eighteen hundred and ninety-three, was duly issued or served, and alleges that the issuance and service thereof was wrongful, without authority of law, and an abuse of the process of said circuit court. And further replying to each of the second, third, and fourth separate defenses, the plaintiff avers: That on the third day of July, eighteen hundred and ninety-three, and for more than twelve years next prior thereto the plaintiff was in the open, actual, notorious, peaceable, and continuous possession, occupation, and enjoyment of all the premises described, claiming title thereto in fee simple, adverse to defendant and its grantors and the whole world, and claimed that by reason thereof he had acquired, and then held and owned, a perfect title to said property in fee simple. Upon this state of the pleadings the defendant interposed a motion for judgment, for the reason that the answer sets up a perfect estoppel against the plaintiff's claim of title and possession of the premises, and that the reply in no way avoids such estoppel. This motion having been granted and the complaint dismissed, the plaintiff appealed. AFFIRMED.

For appellants there was a brief by *Messrs. Watson, Beekman and Watson,* and *Lewis and Keenan,* and an oral argument by *Messrs. Edward B. Watson* and *Fred L. Keenan.*

For respondent there was a brief by *Messrs. Williams, Wood, Linthicum,* and *Flanders,* and an oral argument by *Mr. Geo. H. Williams.*

Opinion by MR. JUSTICE WOLVERTON.

The second further and separate defense is not material for the present consideration, but from it, in connection with the fourth, we are enabled to trace the history of the title in dispute. It appears that on and prior to December fourth, eighteen hundred and seventy-nine, the plaintiff and Aurelia J. Barrell were the owners in fee of the premises, but had executed to W. S. Ladd a mortgage thereon, and upon that date Ladd commenced foreclosure proceedings against the Barrels, which ripened into a decree March twenty-second, eighteen hundred and eighty. A sale was had thereunder, and on August twenty-fifth, eighteen hundred and eighty, Ladd obtained a sheriff's deed for the property. Tilton subsequently became the owner, and commenced the action to recover possession, in which he succeeded, as shown by the third and fourth further and separate defenses. The plaintiff is thus without any paper title to the premises, and relies solely and exclusively upon a title by adverse possession for a period of more than twelve years, claiming that he has been holding adversely to the defendant, his grantors, and all the world, from the twenty-fifth day of August, eighteen hundred and eighty, (the date of the sheriff's deed to Ladd,) to the third day of July. eighteen hundred and ninety-three, when he was ousted by the marshal, under process from the United States Circuit Court, issued in the case of *Tilton* v. *Colburn and Aurelia J. Barrell.* It is settled by recent decisions of this court that adverse possession of real property for the period prescribed by the statute of limitations confers title, and vests it in the possessor. It extinguishes adverse titles, and entitles the possessor to all the remedies incident to the recovery and maintenance of possession under written titles: *Parker* v. *Metzger,* 12 Or. 407 (7 Pac. 518); *Joy* v. *Stump,* 14 Or. 361 (12 Pac. 929). For the purpose of testing the motion for judgment on the pleadings, so far as the

fourth separate answer shows the facts, it is conceded that plaintiff's possession has been adverse and continuous since August twenty-fifth, eighteen hundred and eighty, unless the action commenced in the United States Circuit Court and the proceedings had thereunder stopped it. Hence title to the premises, and the right of possession, as it affects the respective parties, depends upon the effect of the commencement of that action, the judgment therein obtained, and the enforcement of the same by putting defendant into possession.

1.   We will first consider the effect of the judgment in *Tilton* v. *Colburn and Aurelia J. Barrell.*   Section 316, Hill's Code, provides that "Any person who has a legal estate in real property, and a present right to the possession thereof, may recover such possession, with damages for withholding the same, by an action at law." And section 318 requires that "The plaintiff in his complaint shall set forth the nature of his estate in the property, whether it be in fee, for life, or for a term of years, and for whose life, or the duration of such term, and that he is entitled to the possession thereof, and that the defendant wrongfully withholds the same from him to his damage in such sum as may be therein claimed." The action thus provided for is termed by the statute an action to recover the possession of real property, but, unlike the common-law action of ejectment, it is more than a possessory action. It is an action by which the title, estate, and duration thereof, to real property may be determined, as well as the right of possession. There is very little resemblance between the action thus provided for by statute and the common-law action of ejectment, yet in common parlance both are referred to by the latter title. The character of the common-law ejectment is well known, and is founded upon a fiction. Originally the lessor, or

27 OR.—11.

he who had the right of entry on the land, made a formal entry thereon with some friend, to whom he executed and delivered a lease for years, and left him in actual possession, where he remained until some friend, called the casual ejector, or the actual tenant, either by agreement or accident, came and turned him out. The lessee thereupon brought his action against the party ousting him to recover his term, damages, and possession, for which the writ of possession was issued. If the party ousting him was the casual ejector, he was required under a rule of court to give notice to the tenant in possession that he had been sued and would make no defense. This served as a process to the tenant in possession, who appeared and defended by permission of the court, and thereby became the real defendent in the suit. The plaintiff by his declaration did not allege title; he simply alleged that his lessor on a day named demised to him the premises in question, to hold for a specified term then next ensuing; that by virtue thereof he entered upon said premises, and became possessed thereof for the term; that, being so possessed, the defendant, at a time specified, and before the expiration of the term, with force and arms entered and ejected him. Subsequently a change was made by the courts, after which the plaintiff and casual ejector were fictitious persons. The actual tenant, before he would be allowed to appear and defend was required under the consent rule to confess the lease, entry, and ouster, and plead not guilty. The lease, entry, and ouster being confessed, it was necessary to enter proof to establish them, but it was unnecessary to show title in the lessor, notwithstanding none was directly alleged; and the title, though not directly in issue, thus became the real question, and the only question litigated: 6 Am. and Eng. Ency. 198; *Caperton* v. *Schmidt,* 26 Cal. 479 (85 Am. Dec. 195). A judgment thus obtained did not operate as an

estoppel to a retrial of the same question of title.   By making a fresh demise to another nominal character, it became the action of a new plaintiff upon another right. The reason for the non-conclusiveness of the judgment is found in the fictitious character of the action.

Another reason therefor is assigned by Mr. Justice MILLER in *Miles* v. *Caldwell,* 69 U. S. ( 2 Wall.) 41, namely, "the peculiar respect, almost sanctity, which the feudal system attached to the tenure by which real estate was held.   So peculiarly sacred was the title to land with our ancestors, that they were not willing that the claim to it should, like all other claims, be settled forever by one trial in an ordinary personal action, but permitted the unsuccessful party to have other opportunity of establishing his title."   Thus any number of actions could be instituted to try the validity of the same title.   Equity, however, gave relief by injunction, thereby compelling the unsuccessful litigant to cease from harassing his opponent by useless litigation after a sufficient number of trials had taken place to fairly determine the title.   By reason of the nonconclusiveness of judgments in ejectment at common law, and a sort superstitious reverence for land as land, several of the states have provided by statute that two concurrent verdicts and judgments in ejectment shall be conclusive of the title: Black on Judgments, § 654.

In many of the states the fictions of the common law have been discarded, and the real parties in interest are required to litigate titles to lands in their own names. The effect of a verdict and judgment under such statutes is to bar a second action to test the validity of the same title: *Sturdy* v. *Jackaway,* 71 U. S. ( 4 Wall.) 174.   Oregon and some other states have gone further, and made the judgment a bar to any other action between the same parties and those claiming under them as to the same

subject matter.   Missouri had such a statute in eighteen
hundred and fifty-five.   A judgment in ejectment in that
state, while the same was in force, was held to be a bar
to any other action touching the same title between the
same parties, and, it being regarded as a rule of property,
and conclusive in the state courts, it was held by the
United States courts to be alike conclusive therein: *Miles*
v. *Caldwell,* 69 U. S. (2 Wall.) 41.   See, also, *Blanchard v.
Brown,* 70 U. S. (3 Wall.) 248; *Bazille* v. *Murray,* 40 Minn.
48 (41 N. W. 238); *Dawley* v. *Brown,* 79 N. Y. 390; *Hawley*
v. *Simmons,* 102 Ill. 115.   Section 329, Hill's Code, provides
that "in an action to recover the possession of real prop-
erty, the judgment therein shall be conclusive of the es-
tate in such property and the right to the possession
thereof, so far as the same is thereby determined, upon
the party against whom the same is given, and against
all persons claiming from, through, or under such party,
after the commencement of such action"; so that our
statutes are amply sufficient to constitute a judgment
thus obtained an estoppel or bar to a subsequent action
for the same title between the same parties or their
privies.   They provide, *first,* that the action shall be
prosecuted in the name of the real party in interest; and,
*second,* they specifically constitute the judgment a bar by
direct enactment.   Such a judgment is a bar from the
the date of its rendition or recovery, and not from the
date of the commencement of the action: Black on Judg-
ments, § 656.   In *Marshall* v. *Shafter,* 32 Cal. 195, the court
says: "It must be admitted by every one that the recov-
ery operates as an estoppel to this extent, to preclude the
losing party from denying that, as to him, the prevailing
party was, at the time of the rendition of the judgment,
entitled to the possession.   It would seem necessarily to
follow that in order to avoid the estoppel the losing party
must show some other right of possession than that

which he had when the estoppel was created.   He is bound to show such other right, because his former claim of right was determined by the recovery." In *Satterlee* v. *Bliss,* 36 Cal. 514, SAWYER, J., says: "The judgment in the case of *Rees* v. *Mahoney,* is binding and conclusive upon the Mahoneys, and all parties standing in privity with them, and estops them from denying that Rees was entitled, as against them, to the possession of the premises at the time of the rendition of the judgment." See, also, *Caperton* v. *Schmidt,* 26 Cal. 479 (85 Am. Dec. 195); Freeman on Judgments, § 300; *Thrift* v. *Delaney,* 69 Cal. 191 (10 Pac. 475); *Wattson* v. *Dowling,* 26 Cal. 124.

To support the contrary doctrine,— that the estoppel attaches at the beginning of the action, and not at the date of the rendition of judgment,— counsel cites *Yount* v. *Howell,* 14 Cal. 465; Freeman on Judgments, § 301, and other authorities.   Judge FIELD in *Yount* v. *Howell,* says: "With us the judgment is only conclusive of two points, the right of possession in the plaintiff, and the occupation of the defendant at the institution of the suit.   Whatever beyond these facts may be necessary in an independent suit to recover mesne profits must be established by evidence outside of the record in the ejectment."   These remarks were evidently made with refererence to an independent suit to recover mesne profits, and not with reference to an action in ejectment, and can have no application touching the estoppel by judgment in such an action, or of the time when it became effective in that capacity.   Mr. Freeman, in his work on Judgments, (section 301,) cites *Yount* v. *Howell,* but seems to have misapprehended the opinion of Judge FIELD, and took it that the first clause of the above quotation was applicable under the California Code to the conclusiveness of judgments in ejectment generally.   Some conflict in the subsequent decisions of the same court has arisen, presumably through this misap-

prehension. The Tilton judgment having determined that he was the owner in fee simple, and, as against the defendants, lawfully entitled to the possession of said premises, created an estoppel from the date of its rendition, as against the defendants in said action and their privies, to assert that they or either of them were the owners in fee, or entitled to the possession thereof.

2.  The sheriff's deed under the Ladd foreclosure was executed on August twenty-fifth, eighteen hundred and eighty, and judgment was obtained in the action of *Tilton* v. *Colburn and Aurelia J. Barrell* July ninth, eighteen hundred and eighty-three. Possession was obtained by the defendant herein through process issued under that judgment on July third, eighteen hundred and ninety-three; so that, at the time of the rendition of the judgment in the action of ejectment, the statute of limitations had not run against the land, assuming that it commenced to run at the date of the sheriff's deed. If, however, neither the commencement of the action in ejectment, nor the judgment obtained therein, nor the entry made by virtue of the process issued upon said judgment, nor the effect of said action as a whole, stopped the running of the statute, then plaintiff has acquired a title by adverse possession, as more than the statutory period had elapsed since the execution of the sheriff's deed and the date of defendant's entry. The continuity of adverse possession may be broken in several ways. It may be done by an entry of the legal owner, by an abandonment of the possession, by recognition of the owner's title, or an acknowledgment made before the statute has run, by the person in possession that he has and claims no title to the lands occupied. And such recognition or acknowledgment, to be effectual, need not be in express terms, but may be inferred from a variety of circumstances, as by taking a lease from the owner, offering to hold the land

under him, offering to purchase or to surrender it, or as-
serting that he gave him the use of the land for a term or
for life, or in any way which admits the superiority of the
owner's title, and that the occupant holds under or in sub-
servience to him: 2 Wood on Limitations, § 270.   Any of
these conditions would create an estoppel *in pais,* as against
the party in possession, to claim that his prior holding
was adverse.   Now, here we have the solemn judgment of
a court of competent jurisdiction, which, as we have seen,
is conclusive of the estate and right of possession of the
premises in dispute, and creates an estoppel, as against
the defendant, to deny the title of plaintiff, or his right
to the possession thereof at the date of the judgment in
ejectment.   As to all other intents and purposes the es-
toppel here created is just as effective as the estoppel *in
pais,* and we are unable to see why, upon principle, it
should not be just as effective in breaking the continuity
of the running of the statute of limitations.   If a volun-
tary recognition of a superior title will stop the running
of the statute, why not the adjudication of a court of
competent jurisdiction, where the title is the identical
thing in dispute, as well as the right of possession?   Is
the estoppel *in pais* of higher order than the estoppel by
record, as counsel for appellants contend?   In *Gower* v.
*Quinlan,* 40 Mich. 572, the court decides that the continuity
of adverse possession is broken by a decree requiring the
occupant to convey the land, even if the actual possession
is not disturbed.   But it is urged that this decision does
not meet the case at bar, because, as was said by the court,
the decree had the effect of a voluntary conveyance, it
being claimed that the effect of a judgment in ejectment
is not to create a new estate, or vest a new title, but
simply to determine and confirm the title which the pre-
vailing party already had: *Carpenter* v. *Natoma Mining Com-
pany,* 63 Cal. 616.   In *Mabary* v. *Dollarhide,* 98 Mo. 204, (14

Am. St. Rep. 639, 11 S. W. 611,) the court say: "We cannot see how the mere recovery of a judgment in an action of ejectment can suspend the running of the statute of limitations. To have that effect there must be possession under it, or something done to make the defendant's possession subordinate to the plaintiff's title." To the same effect see *Bright* v. *Stevens,* 1 Houst. (Del.) 244; *O'Neal* v. *Boone,* 53 Ill. 35. We have been cited to but one authority which holds that a mere judgment in ejectment will stop the running of the statute of limitations: *Brolaskey* v. *McClain,* 61 Pa. St. 166; so that upon authority we cannot say that the Tilton judgment alone is sufficient to break the continuity of the adverse possession of plaintiff.

But, without deciding this point, we will consider the effect of the judgment in connection with defendant's entry thereunder by virtue of the execution issued thereon. Section 4, Hill's Code, provides that "The periods prescribed in section three (3) of this act for the commencement of actions shall be as follows: Within ten years, action for the recovery of real property, or for the recovery of the possession thereof; and no action shall be maintained for such recovery unless it appear that the plaintiff, his ancestor, predecessor, or grantor, was seized or possessed of the premises within ten years before the commencement of said action." This statute in effect provides that ten years' adverse possession of real property will bar an action therefor, but it just as effectively provides that an action may be commenced at any time before the statute has run. It was undoubtedly the intention of the legislature to give the suitor an adequate remedy if he should commence his action at any time within the statutory period. It is therefore perfectly logical to conclude that the legislature did not intend that the statute should run while the suitor was prosecuting

his action effectively, and hence, if he should recover and obtain possession under his judgment, the statute could have no effect, as against him, whether he got in before or after the expiration of ten years after the statute began to run. This conclusion seems so clear that no argument or citation of authorities is necessary to support it; but it was so earnestly contended that the statute continued to run notwithstanding the commencement of the action, the judgment, and the ouster by virtue of the execution, that we will not rest our opinion here without an examination of the authorities.

As a general proposition the commencement of an action stops the running of the statute of limitations, and no mere lapse of time after its commencement will bar the action: *Evans* v. *Cleveland,* 72 N. Y. 486; *Sandwich Manufacturing Company* v. *Earl,* 56 Minn. 390 (57 N. W. 938); *Bassett* v. *McKenna,* 52 Conn. 437; *Bell's Appeal,* 115 Pa. St. 88 (2 Am. St. Rep. 532, 8 Atl. 177); *Hemphill* v. *McClimans,* 24 Pa. St. 370; *Galveston Railway Company* v. *Cook,* 25 S. W. 455; *Pratt* v. *Pratt,* 96 U. S. 704. But an unsuccessful suit, leading to no change of possession, does not stop the running of the statute: *Moore* v. *Greene,* 60 U. S. (19 How.) 71; *Workman* v. *Guthrie,* 29 Pa. St. 513 (72 Am. Dec. 654); *Langford* v. *Poppe,* 56 Cal. 76. Upon the other hand, however, where judgment has been obtained, and a transfer of possession thereunder follows through the process of the court, the continuity of the running of the statute is broken as of the date of the commencement of the action. *Dunn* v. *Miller,* 75 Mo. 260, is in point. The statute of limitations of that state is ten years. In May, eighteen hundred and seventy-two, Miller commenced an action of ejectment against Dunn, the parties being the same as in the case cited, and in eighteen hundred and seventy-six recovered judgment and obtained possession under due process of

27 OR.—12.

law issued in that case. The statute of limitations began to run in June, eighteen hundred and sixty-four, so it will be seen that the action was commenced within the ten years, but the judgment and possession thereunder were not obtained until after the expiration of that time. The court say: "Nor can his (plaintiff's) possession since that date (June, eighteen hundred and sixty-four,) confer such title, as the statutory period had not elapsed when the suit of *Miller* v. *Dunn* was commenced, in May, eighteen hundred and seventy-two, at the termination of which, in eighteen hundred and seventy-six, he was turned out, and the defendant placed in said possession, under due process of law issued in said cause. The effect of said suit, and the transfer of said possession following thereunder by due process of law, was to work, in contemplation of law, a termination of his adverse possession with the commencement of that suit in May, eighteen hundred and seventy-two. It follows, therefore, that plaintiff's continued possession between the beginning and termination of that suit cannot in this suit avail him anything in computing the statutary period of his adverse possession necessary to confer title." The authors of Sedgwick and Wait on Trial of Title to Land, § 743, say: "The main object of the statute of limitations being to bar an action by the owner for the recovery of the land, it follows, of course, that if an action is instituted by the owner before the statutory period has elapsed, the running of the statute, and the adverse possession upon which it depends, are, at least, suspended, and the right of the parties, according to the general rule, are to be determined as they existed at the time the action was brought. If, then, at that time the statute had already run in favor of the defendant, the plaintiff must fail; but if at that time the statute had not run, the plaintiff is entitled to recover, though the statutory period might elapse during the prog-

ress of the action.    These rules hardly admit of discus-
sion."

In *Carpenter* v. *Natoma Mining Company,* 36 Cal. 616, the
court say: "But the judgment does not create a new es-
tate, or vest a new title, in the plaintiff, which interrupts
the running of the statute of limitations, in case the same
has begun to run.    The running of the limitation can be
interrupted only by an actual entry."    Thus, by a strong
implication, that case sustains the theory that if entry is
made under the judgment it cuts off the running of the
statute.    Mr. Justice McLEAN, in *Moore* v. *Greene,* 60 U. S.
(19 How.) 71, says: "Prosecutions, to stop the operations
of the statute, must be successful, and lead to a change
in possession."    See, also, *Hood* v. *Palmer,* 7 Rich. Law, 138.
We conclude, therefore, that Tilton's action stopped the
running of the statute of limitations at the date of its
commencement, November twenty-ninth, eighteen hun-
dred and eighty-two; and that, having prosecuted it with
effect, obtained his judgment, and by virtue of process
issued thereon placed in possession his successor in in-
terest (the defendant herein), on July ninth, eighteen
hundred and ninety-three, the time which elapsed be-
tween the date of the commencement of that action and
the date of defendant's entry cannot be taken into ac-
count in computing the period of plaintiff's adverse pos-
session.    The cases of *Jackson* v. *Haviland,* 13 John. 229;
*Kennedy's Heirs* v. *Reynolds,* 27 Ala. 364, and *Smith* v. *Horn-
back,* 4 Litt. 232 (14 Am. Dec. 122), are cited as authority
against this theory.    These are all common-law actions
in ejectment.  · They simply hold that a recovery in such
an action is only for the unexpired portion of the term
laid in the demise; that after its expiration no execution
can be issued upon the judgment, and that without entry
under it the statute of limitations is not stayed.    The im-
plication is left, however, that if entry was made under

the judgment the statute would be stayed.   The principle upon which these decisions are based is found in the case last cited, and is a quotation from Lord MANSFIELD in *Aslin* v. *Parkin,* 2 Burrows, 668, namely, "This judgment, like all others, only concludes the parties as to the subject matter of it.   Therefore, beyond the term laid in the demise, it proves nothing at all, because, beyond that term, the plaintiff has alleged no title, nor could he be put to prove any." The demise or term laid in the declaration constituted the subject matter of the controversy, and when this expired the judgment was simply a dead letter for any purpose.   The matters set up in defendant's fourth further and separate defense therefore constitute a complete defense by way of estoppel to plaintiff's cause of action, and, not having been controverted by the reply, the court below properly allowed the motion for judgment on the pleadings.          AFFIRMED.

Argued February 11; decided March 12, 1895; rehearing denied.