# HOLTZMAN *v.* DOUGLAS.

## ERROR TO THE CIRCUIT COURT OF APPEALS FOR THE DISTRICT OF COLUMBIA.

No. 80. Argued November 1, 1897. — Decided November 29, 1897.

This was an action of ejectment. The plaintiff claimed under one Hall, former owner of the land. The defendants claimed under one Douglas, who bought it at a tax sale in 1865. The defendants set up adverse possession in defence. The court instructed the jury that to defeat the claim of the plaintiffs upon the defence of adverse possession the jury must find from the evidence that the defendants, in person or by their tenants, have for more than twenty years prior to the 31st day of May, 1889, held actual, exclusive, continuous, open, notorious and adverse possession of the said premises, and they cannot extend their possession

by tacking it to the prior possession of any person who, during such prior possession, did not claim any title or right to the premises; and, on the request of the defendants, that "if the jury find from the evidence that William Douglas, the ancestor of the defendants, bought at a tax sale held by the late corporation of Washington, so called, the property in controversy in this case and paid the price bid for it by him at such sale and received from the corporation of Washington a deed to said property, which was by him duly filed for record and recorded in the land records of the District of Columbia more than twenty years prior to the commencement of this suit; that thereupon the said property was assessed to the said William Douglas on the tax books of the city of Washington, and the taxes thereon from that time until the beginning of this suit paid by the said William Douglas or his successors in title, the defendants in this case; that at a period of time more than twenty years before the commencement of this suit the said property was rented on behalf of the defendants to a person who took the same and held possession thereof as tenant of the defendants for the purposes of a stone yard, paying rent therefor from the date of making such arrangements with the defendants, and that, although the said property was not inclosed by a fence, yet the person so renting the same, either upon the whole or a part thereof, during his occupancy, deposited stone used by him in his business, and that such use and possession of said property was continued by the occupant thereof actually, exclusively, continuously, openly, notoriously, adversely and uninterruptedly for a period of twenty years next before the commencement of this suit, then the jury is instructed that the defendants are entitled to recover." *Held,* that the instructions as given were substantially correct, and there was evidence in the case upon which to found the one given at defendants' request.

THE case is stated in the opinion.

*Mr. Arthur A. Birney* for appellant.

*Mr. Job Barnard* for appellees. *Mr. Henry E. Davis* and *Mr. James S. Edwards* were on his brief.

MR. JUSTICE PECKHAM delivered the opinion of the court.

This is an action of ejectment, brought to recover the possession of a lot in the city of Washington, designated as lot No. 8 in square No. 941. The defendants set up adverse possession as a defence. Upon the trial before a jury a verdict was rendered in favor of the defendants, upon which judgment was entered, and an appeal taken to the Court of Appeals of

the District of Columbia, where the judgment was in all things affirmed, 5 D. C. App. 397, and the plaintiff has brought the record here for review.

It appeared on the trial that the record title to the lot had been, at the time of his death, in one David A. Hall, who died December 24, 1870, and the heirs-at-law of Hall, by divers conveyances, conveyed this lot to the plaintiff in fee. The plaintiff proved also that the defendants at the commencement of this action were in possession of the premises through one Richard Rothwell, their tenant, and that they claimed to own the same as heirs-at-law of William Douglas, who died in September, 1865. The defendants, on their part, proved a deed of conveyance to William Douglas of the lot in question from the corporation of the city of Washington, the deed reciting a sale of the property for unpaid taxes assessed on the land in the name of David A. Hall, the deed being dated July 6, 1865, and recorded July 12, 1865, in the proper office. The deed was admitted in evidence to show color of title in the defendants.

The facts upon which the defence of adverse possession arises have been so well summarized in the opinion of the Court of Appeals, which was delivered by Mr. Justice Morris, that we take his statement thereof, as follows:

"It was testified on behalf of the defendants that, some time in the latter part of the same year, 1865, one Richard Rothwell, a stonecutter and builder, who owned and occupied an adjoining lot, deposited upon the rear of the lot in controversy some pontoons which he had purchased from the United States, and which he stored there until he could make some disposition of them; and that he afterwards used a part of this lot for the deposit of stone and marble which he used in his business. He testified that he had deposited three or four wagon loads of marble there as early as the year 1867, and that some of the pontoons remained on the lot four or five years. He also testified that, in the year 1870, he commenced to deposit stone there in large quantities; and that in 1872 he erected a small shed on the lot in which to carry on his work, and which he replaced with a larger structure in or about the year 1882.

"Some time in the year 1867, Mrs. Douglas, the widow of William Douglas, apparently acting on behalf of his estate or of the estate of their children, had an interview with Rothwell and came to an understanding with him with reference to his continued occupancy of the lot, in pursuance of which understanding he agreed to pay as rent to her annually therefor a sum of money equal to the amount of taxes that should annually be assessed upon it, and he did so pay rent to her until her death in 1887; and after her death he paid the rent to her daughter, a Mrs. Wirt, down to about the time of the institution of this suit. During all this time, that is, from 1867 to 1889, Rothwell continued to occupy the property and paid rent therefor to the Douglases, and the latter paid the taxes annually for all the years from 1868 to 1893, both inclusive, except for the year 1870, during which there was an interregnum in consequence of the establishment about that time of a territorial form of government in the District of Columbia, the assessment of the property having been in the name of William Douglas since the year 1868, inclusive.

"By a stipulation filed in the cause since the argument, in order to supplement some omission in the printed record, it appears that, at the death of William Douglas in 1865, four of his children were adults and two minors; and that Mrs. Douglas, the widow, was appointed guardian to the two latter, and filed in her guardianship accounts for several years the annual receipts for taxes on this lot, paid by her, and was allowed credit for them by the court. It, therefore, appears that, with reference to this lot, she acted not for herself or on her own individual account, but on behalf of the estate that was then in her children.

"There was a proposition on the part of Mrs. Douglas, apparently about the time of Rothwell's attornment to her, to inclose the lot with a fence. But to this Rothwell objected, on the ground that it would interfere with his use of it and with free access to it of his horses and wagons; and the project was abandoned, so that the lot was never actually inclosed, and the only evidences of occupation consisted in such use of the property as has been indicated. The streets

had not been actually laid out in that neighborhood otherwise than by their delineation on the map of the city; and the whole region was an open field with no definite landmarks to indicate to the casual observer the actual location of this lot."

This action was commenced on the 31st of May, 1889, and, as stated in the brief of the counsel for the plaintiff, the vital question for the jury was, were the defendants in adverse possession prior to May 31, 1869. The evidence is uncontradicted that from a period as early as 1867 the defendants, through their tenant, Rothwell, were in possession of the premises, and such possession was continued up to the commencement of this action; but it is claimed that because Rothwell had entered upon the land in 1865, without claiming to own the same or to be entitled to possession, and had deposited the pontoons and marble mentioned in the foregoing statement of facts, that he thereby became a tenant of the plaintiff's predecessors in title, and that he could not change the character of his possession, as being in subordination to them, by any agreement between himself and Mrs. Douglas without giving notice to them that such an agreement had been made.

The doctrine which the plaintiff seeks to set up, we think, is not applicable to the facts of this case. After the purchase at the tax sale, the delivery of the deed and the recording thereof, Mrs. Douglas in 1867 claimed title to the land and demanded possession thereof from Rothwell, and by reason of the understanding then arrived at between herself and Rothwell he became the tenant of Mrs. Douglas as the representative of the heirs-at-law of William Douglas, and such tenancy continued up to the commencement of this action. She went to him under a claim of ownership and of the right to immediate possession of the lot as owner. He then acknowledged her right, became her tenant and paid rent to her. That certainly placed Mrs. Douglas as the representative of the heirs, in possession of the lot. From that time the facts are sufficient upon which to base a claim of adverse possession. We think it was inaugurated when Rothwell,

under his agreement with Mrs. Douglas, acknowledged her right and paid her rent, and it was immaterial, so far as the heirs are concerned, that Rothwell had before that time entered upon the lot, although under no claim of title and presumably in subordination to the title of plaintiff's predecessors. *Harvey* v. *Tyler*, 2 Wall. 328. If Rothwell were himself asserting a title by adverse possession, while coming into possession in acknowledgment of and under the title of the owners, there might be an opportunity for the application of the doctrine contended for by plaintiff, and in such case Rothwell could not set up title by adverse possession while entering in subordination to the title of the owner, unless he first vacated and then retook possession as a hostile entry, or did some act necessarily evincing an intention to put an end to his tenancy. We are not dealing with Rothwell's rights or title. The defendants did all they were called upon to do in order to take possession and inaugurate an adverse holding, when they came with their tax deed, claimed to own the property described in it and exercised an act of ownership by letting the lot to Rothwell as a tenant at a certain rent. When Rothwell recognized the claim of ownership and remained in possession from that time in subordination to the rights of Mrs. Douglas and the heirs-at-law, their adverse possession, so far as this point is concerned, was sufficiently inaugurated. Mrs. Douglas was no party or privy to the prior entry of Rothwell, and, therefore, whatever the circumstances as proven in this case regarding such prior entry, her rights and those of the heirs cannot be in any way affected thereby. There is no pretence of any fraud or concealment in the case by any one, certainly not by Mrs. Douglas. Neither she nor the heirs were bound, in order to maintain their rights, to give any written or verbal notice to the former owners that they were in possession through Rothwell; nor did the possession of Rothwell, as tenant of the Douglas heirs, fail to commence at the time of this agreement because he did not give notice to the former owners of his recognition of the title and right to the possession as claimed by Mrs. Douglas.

We are also of the opinion that there was evidence to be

submitted to the jury, that the possession of the defendants was in all other respects adverse within the meaning of the law upon the subject for more than twenty years before the commencement of this action. There is no doubt that the entry of defendants by means of the agreement mentioned was under a claim of title on the part of Mrs. Douglas and those whom she represented as the heirs-at-law of William Douglas. There was enough to authorize the jury to find that the possession was notorious and exclusive, continuous, actual, open and adverse. *Ward* v. *Cochran*, 150 U. S. 597.

Payment of the taxes, as described in the above statement of facts, is very important and strong evidence of a claim of title; and the failure of the plaintiffs' predecessors to make any claim to the lot or to pay the taxes themselves, is some evidence of an abandonment of any right in or claim to the property. In *Ewing* v. *Burnet*, 11 Pet. 41, it was held by this court that the payment of taxes on land for twenty-four successive years by the party in possession was powerful evidence of the claim of right to the whole lot upon which the taxes were paid. The same principle is held in *Fletcher* v. *Fuller*, 120 U. S. 534, 552. It is some evidence that the possession was under a claim of right and was adverse.

Although there was no fence around this lot during the period in question, yet it was occupied by the tenant for the purposes of his business, that of marble and stone cutting, and although every foot of the property was not covered by his material, yet it was placed upon the lot in a convenient manner to be used by him in the prosecution of his business, and in a manner which showed that his possession was not in connection with any others, but was exclusive and perfect in himself.

We agree with the court below when, speaking through Mr. Justice Morris, it says that: "Short of an actual inclosure, it is not easy to conceive of a use and occupation more sharply distinctive and adverse than the conversion of the property into a stone yard, with the stone practically scattered all over it, according to the testimony of one or more of the witnesses. Nor should the fact be ignored in this connection that for

upwards of twenty years the record owners of this property wholly neglected their duties to the public in regard to it, never sought to pay the taxes, and permitted the defendants to discharge the burden which it was incumbent upon themselves to bear, and it might well be supposed that they had abandoned the property and acquiesced in the title which the defendants had acquired."

At the request of the plaintiff, the judge charged the jury that, "to defeat the claim of the plaintiffs in this action upon the defence of adverse possession, the jury must find from the evidence that the defendants, in person or by their tenants, have for more than twenty years prior to the 31st day of May, 1889, held actual, exclusive, continuous, open, notorious and adverse possession of the said premises, and they cannot extend their possession by tacking it to the prior possession of any person who, during such prior possession, did not claim any title or right to the premises." *Ward* v. *Cochran*, 150 U. S. 597.

This charge contains a statement of all the requisites for constituting an adverse possession according to the above-cited case.

And the jury were instructed that the defence of adverse possession was an affirmative one, and that it was incumbent upon the defendants to establish it by a clear preponderance of proof, and if the proof were equally balanced, they must find for the plaintiff.

At the request of the defendants the court gave the following instructions to the jury :

" If the jury find from the evidence that William Douglas, the ancestor of the defendants, bought at a tax sale held by the late corporation of Washington, so called, the property in controversy in this case and paid the price bid by him at such sale and received from the corporation of Washington a deed to said property, which was by him duly filed for record and recorded in the land records of the District of Columbia more than twenty years prior to the commencement of this suit ; that thereupon the said property was assessed to the said William Douglas on the tax books of the city of Washington

and the taxes thereon from that time until the beginning of this suit paid by the said William Douglas or his successors in title, the defendants in this case ; that at a period of time more than twenty years before the commencement of this suit the said property was rented on behalf of the defendants to a person who took the same and held possession thereof as tenant of the defendants for the purposes of a stone yard, paying rent therefor from the date of making such arrangement with the defendants, and that, although the said property was not inclosed by a fence, yet the person so renting the same, either upon the whole or a part thereof, during his occupancy, deposited stone used by him in his business, and that such use and possession of the said property was continued by the occupant thereof actually, exclusively, continuously, openly, notoriously, adversely and uninterruptedly for a period of twenty years next before the commencement of this suit, then the jury is instructed that the defendants are entitled to recover."

The plaintiffs excepted to the granting of such request and to the charge as given. For the reasons already suggested, we think the exception not well founded. The charge as given was substantially correct, and there was evidence in the case upon which to found it. The first, second and third requests to charge, made by counsel for plaintiffs, involve the questions above discussed, and were properly refused. There are no other questions of sufficient doubt to render their discussion necessary. We are of opinion there is no error in the record, and the judgment must be

*Affirmed.*