Argued at Pendleton October 28, affirmed December 2, 1919, rehearing denied February 17, 1920.

## BESSLER v. POWDER RIVER GOLD DREDG. CO.

(185 Pac. 753; 187 Pac. 621.)

**Adverse Possession—"Claim of Right"; "Claim of Title"; "Claim of Ownership."**

1. The terms "claim of right," "claim of title," and "claim of ownership," when used to express adverse intent, mean nothing more than the intention of the disseisor to appropriate and use the land as his own to the exclusion of all others, irrespective of any semblance or shadow of actual title or right.

**Adverse Possession—Possession of Vendee Under Contract.**

2. The possession of a vendee of land under contract to purchase, whether oral or written, after payment of the entire purchase price, is presumptively adverse to that of his vendor from the time that such payment was made, and such possession is not prevented from being adverse by his knowledge of a defect in the title or a subsequent demand for a deed.

**Adverse Possession—Possession Under Invalid Contract to Purchase.**

3. Possession under an invalid contract to purchase land, if continued the requisite period after payment of the agreed price, will ripen into title, and such title will be equally as effective as if the same had been acquired under a valid contract.

**Adverse Possession—Legal Owner to Take Notice of Extent of Claim.**

4. An owner of premises is bound to take notice of the nature and extent of the possession by a claimant.

### Adverse Possession — Continued Possession as Constituting Prima Facie Case.

5. Continued, unexplained possession of land for a long period of time is evidence that the possession is adverse and makes out a *prima facie* case, and, until rebutted by some satisfactory evidence, is conclusive as to the nature of the possession.

### Adverse Possession—Title Acquired by Possession for Ten Years.

6. Title by adverse possession is acquired by the open, notorious, exclusive and uninterrupted antagonistic possession under a claim of ownership of land belonging to another for the full period of ten years by a person whose claim of ownership would not be in violation of some contractual duty owing by him to the owner of the land, such as a tenant holding under a lease or the like.

### Appeal and Error—Rulings on Prior Appeal Law of Case.

7. Where plaintiff's pleadings were held sufficient on a former appeal to entitle him to sustain his claimed title to land, the ruling upon such former appeal became the law of the case, and on a subsequent appeal it could not be said that a judgment for plaintiff was improper, where the evidence supported the allegations of plaintiff's pleadings.

### Adverse Possession—Possession of Purchaser from Vendee Adverse to Vendor.

8. After a purchaser from a vendee has paid his purchase money, his continued possession is deemed adverse to the vendee, and consequently to the original vendor, although the latter has not been paid.

### Adverse Possession—Effect of Releasing Vendee by Purchaser from Him.

9. Where purchaser from vendee paid his purchase money and took possession and vendee found that he could not get a deed from the original vendor, and the purchaser released the vendee from his obligation to secure a conveyance on payment of a certain sum to him with the understanding that it would not affect the purchaser's title to the land, such release did not prevent the possession of the purchaser from being adverse as against the original vendor.

### Trespass—Damages not Excessive.

10. In an action for possession of land and damages, defendant having torn down buildings and dredged the land for gold, obtaining about $20,000 worth of gold, a verdict for $15,000 *held* not excessive as a matter of law, in view of the evidence and the fact that there was no exception to the instructions on the measure of damages.

## ON PETITION FOR REHEARING.

### Appeal and Error—Verdict Conclusive on Appeal.

11. In view of Article VII, Section 3, of the Constitution, where there is competent evidence to sustain the verdict, disputes as to different conclusions of fact which might reasonably be drawn from the circumstances of the case by the triers of the facts are set at rest by the verdict.

# From Baker: GUSTAV ANDERSON, Judge.

In Banc.

This action was commenced in the Circuit Court of Baker County, October 27, 1916. The plaintiff seeks to recover possession of the strip of land containing a fraction over three acres described in his complaint, and also damages in the sum of $3,000 for injury done to the premises by defendant and for alleged wrongful ousting of plaintiff and for depriving him of possession thereof.

Plaintiff bases his claim of title to the premises on the ground of adverse possession continued by himself and his predecessors in interest for the full period of ten years. In a supplemental complaint plaintiff further alleges that since the commencement of the action defendant wrongfully entered upon the premises, dredged and mined therefrom all the gold deposits and entirely destroyed the property so that the same is unfit for any use whatever; and plaintiff by reason of these acts sustained further damage in the sum of $12,000 and he therefore demands judgment as in the original complaint and for the sum of $12,000 in addition thereto.

In its answer to the complaint and the supplemental complaint, defendant denies that plaintiff is the owner of the premises, or that he or his grantors or predecessors in interest ever were owners of the premises in controversy, and denies all the allegations of wrongful entry and all the allegations upon which plaintiff bases his claim for damages, and ownership of the premises.

By way of a first separate defense defendant alleges in its answer that at the time of the commencement of the action and for a long time prior thereto, one R. W. Derby was the owner in fee and in possession of the premises in controversy. Secondly, that plaintiff is

95 Or.—18

estopped and precluded from now claiming title to the property described in his complaint for the reason that the title to the same property was heretofore the subject matter of adjudication in an equity suit between the same parties and their privies. Plaintiff by his reply admits that, while the suit in equity was brought and the matters therein alleged as now claimed by defendant in this action, and that a decree was therein entered as pleaded by defendant, he avers in substance as follows: That the decree in the equity suit in effect determined that the possession of plaintiff and his grantors could not have been and was not adverse prior to March, 1906, and that therefore plaintiff now alleges that when the suit was brought ten years of adverse possession had not elapsed, so that the claim of title on the ground of adverse possession, as now claimed, had not matured and therefore could not be litigated or determined in that decree, and that after the commencement of that suit and during the pendency thereof and after the same was determined on appeal the plaintiff remained in adverse, open, hostile, notorious and continuous possession of the premises, until long after the full period of ten years from and after March, 1906, had expired, and that by such adverse possession he has now matured the claim and acquired title by such adverse possession.

This case is appealed to this court for the second time, the first decision being found in 90 Or. 663 (176 Pac. 791, 178 Pac. 237). A suit to quiet title to the same parcel of land involved in this case has also been before the court: *Bessler* v. *Derby,* 80 Or. 518 (157 Pac. 791). As a result the legal questions involved are well settled. It is a case, however, of considerable importance, and merits a discussion of the legal questions involved.

The record tends to disclose the following facts: In 1905 the partnership consisting of P. J. Brown, Frank Geddes, Fred Phillips and J. B. Stenoff purchased the tract of land in controversy to be used by them as the location for their slaughter-house and slaughter-pens. The consideration agreed upon was $250, payment of which was completed according to the testimony in this case and as admitted by appellant, in March, 1906. Immediately upon entering into the agreement they took possession of the premises, built a fence inclosing the same and erected thereon a slaughter-house, ice-house and other necessary buildings to prepare the premises for slaughter-house purposes. At that time these parties were engaged in the butcher business at Sumpter, Oregon, and conducted their business under the name of the Sumpter Meat Company. In March, 1906, because of some financial differences J. B. Stenoff sold his interest in the firm and disappeared. The partnership took possession of the premises in the latter part of the year 1905. Their possession continued from that time until about May, 1906, when W. P. Smith and Thomas Mack entered into negotiations with them for the purchase of the butcher business and the property owned by them at Sumpter, Oregon. These negotiations culminated in Smith and Mack going to Sumpter, looking over the property and making an inventory of the same. In this statement of property owned by Brown, Phillips and Geddes and which they proposed to sell to Smith and Mack the premises in controversy were listed. Smith and Mack after making the inventory and looking over the property at Sumpter returned to Baker. The parties then agreed upon the price to be paid for the business and the property, which Smith and Mack paid in full at that time. Brown, Phillips and Geddes believed that they owned

the real premises in controversy, and so represented to Smith and Mack, for the reason that they had purchased the same from the Sumpter Lumber Company and paid the purchase price. Smith and Mack, relying on that representation, paid for it, and the deal was closed. At this time one of the partners informed Smith that when he returned to Sumpter to take charge of the property and the business purchased he should see Mr. W. B. Riley, who was at that time in charge, and that Riley would see to the preparation of a deed to the premises which later would be executed by Brown, Phillips and Geddes. On May 1, 1906, Smith went to Sumpter and in behalf of himself and Mack took possession of the land which they had purchased, as well as the business. Shortly thereafter he went to see Mr. Riley as he had been instructed. Riley informed him that he had not been able to find a deed to the premises among the papers, and suggested that they should see Blanchard the representative of the Sumpter Lumber Company, who had sold the property, and find out about the deed. A few days later they saw Blanchard, and he informed them that the deed to the premises had not been executed, but stated that the premises had been purchased by Brown, Phillips and Geddes, that all of the purchase money had been paid prior to that time, and that a deed would be made within a very short time, and stated that inasmuch as Brown, Phillips and Geddes had sold the property to Smith and Mack he would have the deed made to Smith and Mack. Several times thereafter Smith spoke to Blanchard about the deed and always received from him the assurance that a deed would be executed in the near future, and he had no intimation from Blanchard or anyone else that there was any question as to the validity of the contract of sale or that the Sumpter

Lumber Company would refuse to execute a deed in accordance with the contract. It had received the money and kept it with full knowledge of what it was paid for. In 1909, Smith bought Mack's interest in the property. At that time Smith and Mack insisted that a deed should be furnished them in accordance with their contract. Brown, Phillips and Geddes paid to Smith and Mack the sum of $500 with the understanding that the payment of that sum of money would not in any manner affect the title of Smith and Mack to the property. Smith and Mack's possession continued from May, 1906, until Smith bought out Mack in 1909, and Smith's possession continued thereafter until he sold to the plaintiff in June, 1912, and the plaintiff's possession continued until July 18, 1916. The possession of Brown, Phillips and Geddes and their successors in interest from March, 1906, was not disturbed in any manner until July 18, 1916. On that date, the defendant, Powder River Gold Dredging Company, commenced suit and enjoined the plaintiff from in any manner interfering with the premises. After securing this injunction the defendant immediately tore down and burned up plaintiff's buildings and fences. Plaintiff then commenced this action. After which and while the case was pending, the defendant dredged the entire premises, rendering them of no possible use or value. The last dredging was done in January, 1917. The plaintiff then filed a supplemental complaint alleging the dredging out and destruction of the premises, and asking for $12,000 additional damages. During the trial Mr. Derby, the manager of the defendant corporation, stated upon the witness-stand that the defendant company had extracted from the premises in controversy gold of the value of $20,184. The jury found that the plaintiff was the owner in fee of the premises, and re-

turned a verdict for the full amount prayed for, namely, $15,000; and from this judgment the defendant has appealed.                                        AFFIRMED.

For appellant there was a brief over the names of *Mr. Thomas H. Breeze* and *Messrs. Clifford & Correll*, with oral arguments by *Mr. Breeze* and *Mr. Morton D. Clifford.*

For respondent there was a brief with oral arguments by *Mr. John L. Rand* and *Mr. A. A. Smith.*

BEAN, J.—At the appropriate time counsel for defendant submitted a motion for a judgment of nonsuit and at the close of all the testimony requested the court to direct the jury to return a verdict in favor of defendant. These requests were denied. The proposition thus raised is the pivotal question in the case. Several exceptions were saved to the ruling of the court relating to the introduction of testimony but in so far as they are deemed important they hinge upon the main issue. It is the contention of defendant that the possession of the land in controversy held by the plaintiff and his predecessors was not adverse, but that the entry was made under an executory contract to purchase the premises and that each held in subordination to the title of defendant's predecessor, and recognized such title. Plaintiff contends that the possession of Brown, Phillips and Geddes became adverse in March, 1906, by virtue of the payment of the purchase price in full, and their possession with their successors in interest so continued until July 18, 1916, thus being in adverse possession for more than ten years.

1. There was an abundance of evidence tending to show that the plaintiff and his predecessors held possession of the land under a claim of right or ownership for

more than the statutory period of ten years, using the same for slaughter-house purposes and erecting buildings and making other improvements thereon and cultivating a portion thereof during the latter part of that time; that all the essential elements of adverse possession were present. The terms "claim of right," "claim of title" and "claim of ownership" when used in the books to express adverse intent mean nothing more than the intention of the disseisor to appropriate and use the land as his own to the exclusion of all others, irrespective of any semblance or shadow of actual title or right: 1 R. C. L., p. 706, § 19; *Crowder* v. *Doe,* 162 Ala. 151 (50 South. 230, 136 Am. St. Rep. 17); *Power* v. *Kitching* (N. D.), 88 Am. St. Rep. 701, note at page 703.

2. The possession of the partnership of Brown, Phillips and Geddes, the vendees, under an executory contract for the purchase of the land from the Sumpter Lumber Company, the vendor, after the full payment of the consideration in March, 1906, was presumptively adverse to the vendor and its successor who had notice of the vendees' rights: *Anderson* v. *McCormick,* 18 Or. 301, 303 (22 Pac. 1062); *Ambrose* v. *Huntington,* 34 Or. 484, 489 (56 Pac. 513); *West* v. *Edwards,* 41 Or. 609, 614 (69 Pac. 992); *Bessler* v. *Powder River Gold Dredging Co.,* 90 Or. 663 (176 Pac. 791, 178 Pac. 237); *Watts* v. *Witt,* 39 S. C. 356 (17 S. E. 822); *Woods* v. *Montevallo etc. Co.,* 84 Ala. 560 (3 South. 475, 5 Am. St. Rep. 393); *La Frombois* v. *Jackson,* 8 Cow. (N. Y.) 589 (18 Am. Dec. 463); note to *Jasperson* v. *Scharnikow* (U. S. C. C. A.), 15 L. R. A. (N. S.) 1178, 1236. The rule is stated in R. C. L., page 751, Section 74, thus;

"But the possession of the vendee of land, under contract to purchase, whether oral or written, after payment of the entire purchase money, is presumptively

adverse to that of his vendor from the time that such payment was made. Nor is his possession prevented from being adverse by his knowledge of a defect in the title, or his subsequent demand for a deed; * * ''

It is stated in 2 C. J., page 154, Section 273, as follows:

''While the law seems to be otherwise in some states, the decided weight of authority is to the effect that a vendee of land in possession under a contract of sale by parol or in writing holds adversely to his vendor from the moment of payment or performance of the conditions of the contract, although a deed is not executed, and if this possession is continued for the statutory period the purchaser acquires title by the statute of limitations. However, the vendee may, by express recognition of the vendor's title, defeat the adverse character of his possession.''

The rule is announced that under an executory contract for the purchase of land where the entire consideration has been paid the vendee is not required to give further notice to his vendor that he holds adversely, the payment of the purchase price in itself being notice: *Normant* v. *Eureka County,* 98 Ala. 181 (12 South. 454, 39 Am. St. Rep. 45); *Watts* v. *Witt,* 39 S. C. 356 (17 S. E. 822). The knowledge of the members of the partnership, the vendees, that their title was not perfect would not prevent their possession from being hostile, neither would their demand for a deed made in the former suit work such a hindrance. The suit was a solemn assertion in the court that they claimed the right to the land.

In *Anderson* v. *McCormick,* 18 Or. 301, 303 (22 Pac. 1062), this court speaking by Mr. Justice STRAHAN adopted the rule which prevails in most of the states of the Union. The following language was there used about which there can be no misunderstanding:

"The rule seems to be that where a purchaser enters into possession of land under an executory contract which leaves the legal title in his vendor, and contemplates a further conveyance of the complete title, his entry will be in subordination to the legal title; and in such case, as also in the case of lessee and other similar cases, where one is under the owner of the legal title, a privity exists which precludes the idea of a hostile or tortious possession that could silently ripen into an adverse possession under the statute of limitations: *Core* v. *Faupel,* 24 W. Va. 238; *Jackson* v. *Spear,* 7 Wend. (N. Y.) 401; *Williams* v. *Snidow,* 4 Leigh (Va.), 14; *Gay* v. *Moffit,* 2 Bibb. (Ky.) 506 (5 Am. Dec. 633); *Keys* v. *Mason,* 44 Tex. 140; *Pratt* v. *Caufield,* 67 Mo. 50.   But where the vendee has executed his part of the agreement by the payment of the purchase money, his possession is from that time adverse to the vendor."

There has been no deviation from such announcement in this state.

3. Possession taken under an invalid contract, if continued the requisite period, will ripen into title, and such title will be equally as effective as if the same had been acquired under a valid contract: *Newsome* v. *Snow,* 91 Ala. 641 (8 South. 377, 24 Am. St. Rep. 934); *Bryan* v. *Atwater,* 5 Day (Conn.), 181 (5 Am. Dec. 136); *Woods* v. *Montevallo etc. Co.,* 84 Ala. 560 (3 South. 475, 5 Am. St. Rep. 393).

4, 5. The Sumpter Lumber Company knew or should have known of the possession and claim of plaintiff and his predecessors. An owner of premises is bound to take notice of the nature and extent of possession by claimant. The party holding the superior title is not in the condition of an ordinary and casual observer, but must diligently look to his own interests, know the boundaries of his own land, and ascertain the extent, meaning and locality of any settlement made within

them without his authority: 2 C. J., p. 268, § 597½, and note. Continued, unexplained possession of land for a long period of time is evidence that the possession is adverse, and makes out a *prima facie* case, and until rebutted by some satisfactory evidence is conclusive as to the nature of the possession: *Smith* v. *Badura,* 70 Or. 58, 62 (139 Pac. 107); *Dunnigan* v. *Wood,* 58 Or. 119, 124 (112 Pac. 531).

The position of the defendant is in effect that before possession taken by a vendee under a contract to purchase real property, although the purchase price has been paid in full, can be claimed to be adverse the contract must be such that upon performance by the vendee he can in equity compel a conveyance of the land. We are unable to agree with this claim.

6. Adverse possession is not based on title, but is in hostility to the true title. Title by adverse possession is not dependent on validity or invalidity of any contract of purchase or the presence or absence of a remedy in equity for specific performance. Title by adverse possession is acquired by the open, notorious, exclusive and uninterrupted antagonistic possession under a claim of ownership of land belonging to another for the full period of ten years, by a person whose claim of ownership would not be in violation of some contractual duty owing by him to the owner of the land, such as a tenant holding under a lease or the like. It must be in hostility to the true title. Where there is title there is no reason to invoke the doctrine of adverse possession. The plaintiff in this case bases his right to the land upon the principle of law that whereas he and his grantors or predecessors have had such adverse possession of the premises in controversy for the statutory period, the title to the

premises has been lost to the defendant and has become vested in the plaintiff.

7. It is unnecessary in this case for the court to pass upon the facts forming the basis of plaintiff's title. It is sufficient for us to find that the testimony in the case tends to support the allegations of plaintiff's complaint and reply. The pleadings in the case were before this court in the former appeal and were held to be sufficient, if true, to sustain plaintiff's title to the land. The ruling upon the former appeal has become the law of this case.

8. The claim of adverse possession might also be based upon the entry and possession of Smith and Mack on May 1, 1906, when they purchased the premises of Phillips, Brown and Geddes and paid in full therefor. The rule in regard to this second entry and possession of Smith and Mack is stated in 2 C. J., page 155, Section 276, thus:

"But after a purchaser from the vendee has paid his purchase money his continued possession is deemed adverse to the vendee and consequently to the original vendor, although the latter has not been paid, * * "

The testimony tended to show that Smith and Mack bought the land in the belief that the partnership owned the same and without any knowledge on their part that the Sumpter Lumber Company from whom the partnership had purchased had not executed a deed. Smith and Mack were not in privity with the Sumpter Lumber Company and knew nothing about its claim until the deal was closed and they had paid for the property. Under the circumstances disclosed by the testimony the possession of Smith and Mack clearly comes within the rule stated in 2 C. J. 155. See also *Montgomery County* v. *Severson*, 64 Iowa, 326 (17 N. W. 197, 20 N. W. 458). The latter case was a suit in-

stituted by Montgomery County to recover the possession of lands from the defendants which had been sold by the county to a company known as the American Emigrant Company and by it sold to various defendants or their predecessors in interest. The county had entered into a contract selling to the Emigrant Company the swamp-lands situated in the county, and subsequently instituted a suit against that company to recover the lands and to set aside and annul the contract on the ground that it was void for the reason that the county had no authority to make it. In this suit the county prevailed. It then sought to recover from the defendants the lands which had been sold to them by the Emigrant Company, paid for in full and of which they had taken possession. The defendants set up as a defense the statute of limitations and in discussing the availability of the statute of limitations in that case the court says on page 198 of the opinion (64 Iowa, 328, 17 N. W. 198):

"In each case as we have shown there was a contract for the sale of the lands and the respective defendants, or their grantors entered into the possession and held and improved the respective tracts as the owner thereof. They did not, it is true, hold the legal title or claim to hold it until the deeds to them were executed by the Emigrant Company. Until then they claimed but an equity in the lands which could be enforced upon the payment of the purchase money. It is not necessary for one relying upon the statute of limitations to show a legal title. A claim of right to the land is sufficient and this claim need not be based upon a legal title or a paper title. It may rest in parol. A claim based upon an equity is sufficient."

9. The testimony in the present case tended to indicate that Phillips, Brown and Geddes in selling the land to Smith and Mack represented that they were the owners of the land and promised to convey that owner-

ship to the purchasers; that after they were unable to get the deed promised by the Sumpter Lumber Company, they paid Smith and Mack $500 to release them from their obligation to secure a conveyance; that Smith and Mack accepted this sum with the understanding that it would not affect their title to the land nor their right to the premises. The partnership was obligated to furnish the deed, and, having failed to do so they had a right to secure a release from that obligation without in any way changing the rights of the parties to the land itself, and this they did in order to save themselves from the cost of obtaining a deed, as well as the damages sustained by Smith and Mack through their failure to comply with their agreement. The testimony tended to show and the jury evidently found in effect that Smith and Mack purchased the premises, paying therefor, and expecting to obtain a conveyance of the title thereto, but the partnership found that a deed could not be executed in accordance with their agreement and paid Smith and Mack the amount agreed upon for the difference between what they got and what they should have received according to terms of the sale to them by the partnership. The purchasers from the partnership obtained all the right to the land that this firm theretofore held. When this settlement was made Smith and Mack did not surrender any interest in the premises.

From a careful reading of the testimony in the case we find that there was ample evidence to sustain the allegations made by plaintiff in his pleadings. There was no error in denying the motion for judgment of nonsuit, or in refusing to direct a verdict in favor of defendant.

The question of the effect of the decree in the former suit was determined upon the first appeal in this case

in an opinion by Mr. Justice BENSON and also one by Mr. Justice BURNETT upon a petition for a rehearing, and further comment would be of no avail.

10. The defendant complains of the verdict for $15,000 as excessive. In addition to the buildings and other improvements which the testimony tended to prove were destroyed and for which plaintiff claimed $3,000 and about which there is little dispute, the evidence on behalf of plaintiff tended to show that the land in controversy is located in an old bed of the river, and was dredged to the depth of from 24 to 30 feet; that the different tests made in prospecting in the "old bed" a short distance above the Bessler tract showed approximately that the gravel would yield from 9.52 cents to 27.55 cents in gold per cubic yard. The testimony of Mr. Derby, the manager of the defendant company, in regard to the value of the ore extracted from the land, was as follows:

"Q. Do you know about how much the land in controversy produced?

"A. I know approximately.

"Q. How much?

"A. Approximately a gross of twenty thousand dollars, $20,184."

The amount awarded by the jury was $15,000 including compensation for the destruction of the buildings and other structures. The question was submitted to the jury under a charge by the court to which we find no exception on behalf of defendant as to the measure of damages. Under these conditions it cannot be said as a matter of law that the verdict is excessive. Obviously the jury did not deduct as much for the cost of dredging the land as the defendant claimed. They apparently considered that as the defendant was extracting gold from the adjoining land the margin of at

least $8,184 was a fair value of the dredging.   The case was plainly and fairly submitted to the jury by the instructions of the court.

After careful consideration, finding no error in the record the judgment of the lower court is affirmed.

AFFIRMED.

---

Rehearing denied February 17, 1920.

ON PETITION FOR REHEARING.

(187 Pac. 621.)

On petition for rehearing.   Petition denied.

REHEARING DENIED.

*Messrs. Clifford & Correll* and *Mr. Thomas H. Breeze,* for the petition.

*Mr. John L. Rand* and *Mr. A. A. Smith, contra.*

BEAN, J.—Counsel for defendant files an earnest petition for a reconsideration of this case.   The main contention is that "there is manifest error in drawing conclusions of ultimate facts, in diametrical opposition to those drawn by Mr. Justice HARRIS" in the former suit of *Bessler* v. *Derby,* 80 Or. 513 (157 Pac. 791).

In passing we wish to state that we notice no such conflict between the findings in the former suit and the conclusions of the jury in the present case.

Were it not for the fact that one of the learned counsel for defendant is from a sister state where apparently they do not preserve the distinction between an action at law and a suit in equity, as our Code does, we should not feel disposed to discuss this question.   In our former opinion we twice declared, and we again as-

sert, that we do not find the facts or pass upon the question of the weight of the evidence in this law action. That is the province of the jury. The inhibition of our Constitution, Article VII, Section 3, is as follows:

"In actions at law, no fact tried by a jury shall be otherwise re-examined in any court of this state, unless the court can affirmatively say there is no evidence to support the verdict."

Therefore, in referring to the facts which the jury found by their verdict, it is only for the purpose of ascertaining whether there is any substantial competent evidence to support the verdict. That is as far as our authority extends, as to conclusions of fact in an action at law. It does not seem to be claimed on the part of defendant, and indeed we do not see how it could be so claimed, that there was no competent evidence to sustain the verdict. There was some dispute it is true, and different conclusions of fact might reasonably be drawn from the circumstances of the case by the triers of the facts, but those matters were set at rest by the verdict.

Complaint is made in regard to the statement in reference to Blanchard, the agent of defendant of whom plaintiff's predecessors in interest attempted to purchase the land in question. Our discussion of the question of adverse possession of the land in our former memorandum was based upon the proposition that the contract of purchase under which plaintiff and his predecessors claimed was invalid, and we attempted to so state. Plaintiff's right to the land is based solely upon adverse possession thereof for the statutory period, and not upon a contract of purchase.

After a careful examination of the courteous petition for a rehearing, we adhere to our former opinion. The petition is denied.

                    AFFIRMED.   REHEARING DENIED.