Argued March 24, affirmed April 27, 1926.

# VICTOR PHIPPS *v.* FRANK L. STANCLIFF.

### (245 Pac. 508.)

**Adverse Possession — Showing That Taxes were Assessed to and Paid by Others is Evidence Refuting Plaintiff's Claim of Title, Together With Oral Admissions Against Interest, Warranted Submission of Action in Ejectment to Jury.**

1. In ejectment by plaintiff claiming title by adverse possession, stipulation showing that taxes were assessed against and paid by others than plaintiff during statutory period is evidence refuting plaintiff's claim of title, and, together with oral admissions against interest, justify inference that plaintiff did not claim ownership, warranting submission of case to jury.

**Adverse Possession—Failure of Party Claiming Title by Adverse Possession to Pay Taxes is Competent Evidence, on Issue of Claim of Ownership.**

2. Though payment of taxes is not essential to establish claim of title by adverse possession, failure of claimant to pay taxes is competent evidence, on issue whether property was occupied under claim of ownership during statutory period.

**Trial.**

3. Submission of cause to jury is not error, though both parties move for directed verdict.

**Appeal and Error.**

4. No error can be predicated on court's failure to direct a verdict if there is any evidence to support verdict rendered.

**Trial—Requested Instruction That Knowledge by Plaintiff Claiming Title by Adverse Possession as to Who was the True Owner is Immaterial Held Properly Refused as Singling Out Particular Testimony.**

5. In ejectment by plaintiff claiming title by adverse possession against railroad, requested instruction that plaintiff's knowledge that land belonged to railroad is immaterial *held* properly refused as singling out particular line of testimony and directing attention to it, though instruction was correct as an abstract proposition of law.

**Appeal and Error.**

6. Question not raised in trial court cannot be considered on appeal.

2.   See 1 R. C. L. 699.
3.   See 26 R. C. L. 1081.
6.   See 2 R. C. L. 69.

**Appeal and Error—Contention, on Appeal, by Plaintiff Claiming Title by Adverse Possession, That Land was not Subject to Homestead Entry, Held Inconsistent With Stipulation at Trial to the Contrary, and Hence cannot be Considered (39 Stat. 218).**

7. Contention, on appeal by plaintiff claiming title by adverse possession, that land was not subject to homestead entry by defendant, because in plaintiff's possession at time of entry, *held* inconsistent with stipulation at trial that, if title was not acquired by adverse possession, land reverted to the United States, under 39 Stat. 218, subject to homestead entry, and hence contention cannot be considered on appeal.

**Appeal and Error.**

8. Under Constitution, Article VII, Section 3c, Supreme Court cannot disturb jury verdict, where there is any evidence to sustain it.

Adverse Possession, 2 C. J., p. 122, n. 43 New, p. 275, n. 35, 36.
Appeal and Error, 3 C. J., p. 694, n. 54, p. 718, n. 50; 4 C. J., p. 853, n. 58, p. 902, n. 12.
Trial, 38 Cyc., p. 1583, n. 75, p. 1676, n. 71, p. 1677, n. 75.

From Douglas: James W. Hamilton, Judge.

Department 2.

This is an action in ejectment to recover possession of 21½ acres of land, being originally a part of the Oregon & California railroad land grant. On former appeal, 110 Or. 299 (214 Pac. 335, 222 Pac. 328), it was held by majority opinion of this court that plaintiff was entitled to establish title to this land by adverse possession against the railroad company before it revested in the United States government, under the terms of the Chamberlain-Ferris Act of June 9, 1916 (39 Stat. at L. 218). The history of this cause is recorded at length in prior opinions of this court and it is not deemed necessary to restate it here. Suffice it to say, when the cause was reversed and remanded, it became a contest between plaintiff, whose claim of title was based on adverse possession, and defendant, who asserted a preferred right to possession of the land by virtue of a homestead entry thereon, and approval of the same by the United

States Land Office at Roseburg, Oregon, September 19, 1920. It is the theory of plaintiff that title as aforesaid was acquired by his predecessors long prior to the time that the land could have revested in the government and that it was not a part of the public domain when defendant entered upon it as a homestead under the provisions of the above act of Congress.

At the conclusion of the testimony plaintiff and defendant each moved for directed verdicts; these motions were denied; the cause was submitted to the jury; a verdict was returned in favor of defendant, and judgment was entered accordingly. Plaintiff appeals, and assigns as error the refusal of the court to give a certain requested instruction, to direct a verdict for him, and to grant a new trial.

AFFIRMED.

For appellant there was a brief and oral argument by *Mr. B. L. Eddy.*

For respondent there was a brief and oral arguments by *Mr. Guy C. Cordon* and *Mr. Carl E. Wimberly.*

BELT, J.—1. Did the court err in submitting this case to the jury and in entering judgment upon the verdict rendered? There is ample testimony tending to establish plaintiff's claim of title by adverse possession, but the vital question is whether there is any evidence to the contrary. It was stipulated by the parties hereto that the land in controversy

"was not assessed by Douglas County, Oregon, for State and County taxes prior to the year 1901; that said Lot Nine (9) was assessed by said county for State and County taxes for the years 1901 to 1915,

inclusive, in the name of the Oregon and California Railroad Company, as owner thereof; that said Railroad Company paid the taxes so assessed against Lot Nine (9) for the years 1901 to 1912, inclusive, and that the United States paid the taxes so assessed against said lot for the years 1913, 1914 and 1915, and that said lot was not assessed by Douglas County for State and County taxes for the years 1916 to 1921, inclusive; that said lot Nine (9) was never assessed to Victor Phipps nor Robert Phipps; that no proof need be offered on said matters at said trial.''

2. We agree with defendant's contention that the above stipulation constitutes evidence tending to refute plaintiff's claim of title. It is true that it was not essential to plaintiff's cause that evidence be offered of payment of taxes on this land by him or his predecessors, but it does not follow that the failure so to do would not be competent evidence supporting defendant's theory that plaintiff did not claim ownership thereto. Ordinarily, a person pays taxes on that which he claims to own. At least it was      matter, together with all of the other facts and circumstances in the case, for the jury to consider relative to the issue as to whether this property was occupied under a claim of ownership during the statutory period necessary to establish title. The jury might have been convinced from evidence, aside from question of payment of taxes, that plaintiff had acquired title by adverse possession, but it was not bound to do so. The rule is thus stated in *Looney* v. *Sears,* 94 Or. 690 (185 Pac. 925, 186 Pac. 548):

''It is true that his failure to pay the taxes on the land and his failure to return the same on his tax lists was persuasive evidence against his claim of right, and if his acts of ownership were otherwise equivocal or doubtful, his failure to pay the taxes might turn the scales against him. But while the

failure to pay the taxes, or to return the property for taxation, is competent evidence and of considerable weight, it is by no means conclusive." Also see 2 C. J. 275 and cases cited under note 36.

In *Holtzman* v. *Douglas,* 168 U. S. 278 (42 L. Ed. 466, 18 Sup. Ct. Rep. 65, see, also, Rose's U. S. Notes), it is said:

"Payment of the taxes * * is very important and strong evidence of a claim of title; and the failure of the plaintiff's predecessors to make any claim to the lot or to pay the taxes themselves is some evidence of an abandonment of any right in or claim to the property."

In *Todd* v. *Weed,* 84 Minn. 4, 86 N. W. 756, we find:

"If the payment of taxes tends to show an intention to claim title,—and clearly it does,—the failure to pay them would *a fortiori* tend to show the converse of the proposition."

There is also evidence of oral admissions against interest made by plaintiff, which, if true, would justify a reasonable inference that he did not claim ownership of the premises in controversy.

3, 4. However the conflict in the evidence, plaintiff urges it was error to submit the cause to the jury for the reason that both parties moved for directed verdicts, which is equivalent to a stipulation that there was no issue of fact involved. Appellant's contention cannot be upheld in the light of *Banfield et al.* v. *Crispen et al.,* 111 Or. 388 (226 Pac. 235), and *Hudelson* v. *Sanders-Swafford Co.,* 111 Or. 600 (227 Pac. 310). While the court may have been remiss in its duty in failing to direct a verdict, no error can be predicated thereon, if there is any evidence to support the verdict rendered. The trial court, in effect, adopted the verdict of the jury and entered judgment

accordingly. It accomplished indirectly what could have been done by directing a verdict for defendant. Plaintiff cannot complain where, as in the instant case, there is evidence supporting the verdict.

5. Plaintiff complains of failure to give the following requested instruction:

"And I instruct you that in order to acquire title by adverse possession it is not necessary that the claimant should know who is the true owner, and furthermore any information furnished to Robert Phipps or the plaintiff as to the fact that the land office records showed the land to be railroad land would make no difference in this case, if you find that the possession of Robert Phipps was of the character herein defined to you and continued for ten years from and after August 29, 1883."

As an abstract proposition of law, plaintiff could have acquired title by adverse possession regardless of whether he knew who was the true owner of the land in dispute or the fact that the land office records showed it to be railroad land, but these matters, together with all of the other evidence in the case, were for the consideration of the jury. It would have been improper to have singled out this particular line of testimony and directed attention to it: *Kellogg v. Ford,* 70 Or. 213 (139 Pac. 751). It is urged that "there was danger that the jury would infer that if Phipps knew there was a railroad lot in the farm he could not acquire title by adverse possession." We are unable to follow this reasoning in view of the fact that the sole basis of plaintiff's title was his claim of ownership against the railroad company. The trial court in its instructions fully and fairly covered the issues on this phase of the case and appellant has no cause to complain in that respect.

. 6, 7. Finally, it is contended that the land was not subject to homestead entry for the reason that at the time defendant made his entry thereon it was in possession of plaintiff. Appellant did not raise this question in the trial court and, therefore, it cannot be considered here. Furthermore, this contention is inconsistent with the theory upon which appellant sought to prevail, as shown by the following stipulation:

"That from the time said railroad company became entitled thereto, said land continued to be property of said railroad company subject to the terms and conditions of the acts of Congress specified in Paragraph I hereof until revested in the United States by the Act of Congress known as the Chamberlain-Ferris Act approved June 9, 1916 (39 Stat. at Large 218, chapter 137), unless the title thereto was acquired by adverse possession by plaintiff and his predecessors in interest; that is to say, if said title was not acquired by the plaintiff and his predecessors in interest by adverse possession, then the said land was revested in the United States by the said Chamberlain-Ferris Act and became public land of the United States and subject to the defendant's homestead entry under the provisions of the homestead laws of the United States as modified by said Act and House Joint Resolution No. 20 adopted by the House of Representatives of the United States and approved February 14, 1920; but if the said plaintiff acquired title to said land by adverse possession and conveyance prior to the passage of the said Chamberlain-Ferris Act, then said land did not revest in the United States or become public land or subject to defendant's homestead entry."

As stated in *Wallace* v. *American Life Ins. Co.,* 111 Or. 510 (225 Pac. 192, 227 Pac. 465):

"Where a case has been tried on a certain theory, with the acquiescence of the parties, it must be so

continued on appeal, and the Supreme Court will not permit a change of position in that tribunal.''

8. It may well be argued that the preponderance of the testimony favors plaintiff, but under the inhibition of Article VII, Section 3c of the Constitution of Oregon, we are precluded from disturbing the verdict of a jury where there is any evidence to sustain the same.

The judgment of the lower court is affirmed.

AFFIRMED.

MCBRIDE, C. J., and BEAN and BROWN, JJ., concur.