Argued March 26, affirmed July 2, reconsideration denied
August 14, petition for review denied September 18, 1979

GARRETT, *Respondent,*

*v.*

LUNDGREN, et al, *Defendants,*

ZOOK, et al, Appellants.

(No. 8407, CA No. 11653)

596 P2d 1318

Donald R. Crane, Klamath Falls, argued the cause and filed the briefs for appellants.

Forrest E. Cooper, Lakeview, argued the cause and filed the brief for respondent.

Before Schwab, Chief Judge, and Lee, Buttler, and Joseph, Judges.

LEE, J.

**LEE, J.**

This is a suit in equity to quiet title to five ten-acre parcels adjacent to property owned by plaintiff. Defendants counterclaimed in trespass for the rental value of the parcels. The court rendered a decree in favor of plaintiff, finding that adverse possession had been established for the requisite ten-year period. Defendants contend that plaintiff's possession was not under claim of right or color of title for the requisite period because (1) he knew others held title to the parcels and paid taxes on them, and (2) he had not "owned" the land for ten years and could not tack on his parents' period of possession. We affirm.

The ten-acre parcels in dispute are situated within sections 35 and 36 in Township 39 South, Range 19 E.W.M., and section 5 in Township 40, South, Range 10 E.W.M. These three sections were divided by speculators into ten-acre tracts and sold to buyers all over the nation in the early 1900's. The disputed parcels were never occupied by the owners in the chain of title but were used by those who acquired the intermingled property via homestead patents, inheritance, or purchase of state school sections.

Plaintiff was born on section 35 approximately 55 years ago and has lived there most of his life. Sections 35 and 36 were sage brush until plaintiff and his family cleared the land in the 1930's.

In order to prove a title by adverse possession, plaintiff must establish by clear and positive proof that he and his predecessors have had actual, open, notorious, exclusive, continuous and hostile possession for the full statutory period of ten years under claim of right or color of title. *Beaver v. Davis*, 275 Or 209, 211, 550 P2d 428 (1976); ORS 12.050. Defendants contend that plaintiff failed to act under claim of right or color of title because plaintiff knew that others had title and paid the taxes on the land he was farming. These factors are not necessarily determinative. In *Nedry v.*

[25]

*Morgan*, 284 Or 65, 70, 584 P2d 1381 (1978), the Oregon Supreme Court discussed claim of right and the relevance of the transferee's knowledge of outstanding interests in property, stating,

> "Normally, one who realizes that another has legal title to property will not claim the property as his own. *Nevertheless, knowledge of an outstanding interest in the property does not preclude the possessor from exercising the claim of right required for adverse possession.* In *Bessler v. Powder River Dold Dredg. Co.*, 95 Or 271, 185 P 753 (1919), *reh. denied* 187 P 621 (1920), this court stated the rule as follows:
>
> > " '* * * The terms "claim of right," "claim of title" and "claim of ownership" when used in the books to express adverse intent mean nothing more than the intention of the disseisor to appropriate and use the land as his own to the exclusion of all others, irrespective of any semblance or shadow of actual title or right.'
>
> *In other words, 'claim of right' simply means that the possession is not permissive and that the party in possession has not led the true owner to believe that the possessor recognizes the true owner's rights.* 3 American Law of Property 776, § 15.4 (Casner ed 1974); 4 Tiffany, Real Property, § 1142 (3d ed 1975); *see also Norgard et al v. Busher et ux*, 220 Or 297, 301, 349 P2d 490, 493, 80 ALR2d 1161 (1960). *Cf., Smith et al v. Tremaine et ux, supra* (recognition of legal title in cotenants); *Sertic v. Roberts*, 171 Or 121, 136 P2d 248 (1943) (acknowledgement of title in lessor); *Oregon City v. Or. & Cal. R. Co.*, 44 Or 165, 74 P924 (1904) (request that the possessor be allowed to make certain use of the property). When it appears that the possessor is aware of the possibility that another party had an interest in the property, the court must examine the evidence to detemine whether or not the possessor nevertheless intended to claim the entire property as his own. *Norgard et al v. Busher et ux, supra* at 302." (Emphasis supplied.)

In the instant case, the evidence shows that plaintiff took over operation of the family ranch in 1965 and used the ranch land, including the disputed parcels, for grass, grain and hay production, as well as

[26]

grazing, for over ten years. Furthermore, all three sections containing the disputed parcels have been surrounded by fences and posted against trespassers for over ten years. Plaintiff also testified that he would have evicted defendants if they attempted to use the disputed land at any time. Finally, although the failure to pay taxes may turn the scales in a doubtful case, it is not conclusive. *Reeves v. Porta*, 173 Or 147, 156, 144 P2d 493 (1944). *See also Terry v. Timmons*, 282 Or 363, 367, 578 P2d 405 (1978). We conclude that the evidence establishes that plaintiff acted under a claim of right for the requisite period.

Defendants' second contention is that plaintiff had not "owned" the land for ten years and could not tack his parents' possession because their rights were not conveyed to him. The word "owned" is misleading in this context because plaintiff is relying upon possession under claim of right rather than color of title. Therefore, plaintiff need only prove that he has actually used the land openly, notoriously, exclusively and in a hostile manner for a continuous ten-year period. *See Almond v. Anderegg*, 276 Or 1041, 1045, 557 P2d 220, (1976).

As stated above, plaintiff has operated the ranch since his father died in 1965. At that time, he shared an undivided interest in the deeded property with his mother and his brothers and sisters. In 1969, his mother died and in 1972 he bought his brothers' and sisters' interests in the land. Plaintiff asserted possession of the disputed parcels on behalf of himself and his family when he assumed operation of the ranch in 1965, and there is no evidence of interruption since that time. Periods of possession of successive holders may be united to complete the prescriptive periods necessary for acquisition of title by adverse possession, provided that there are no abandonments or other interruptions automatically returning seizure to the owner. *Du Val v. Miller*, 208 Or 176, 181, 300 P2d 416 (1956). Plaintiff may tack the prior possession of his mother and his siblings.

[27]

Our examination of the evidence confirms that plaintiff acquired the disputed parcels by adverse possession.

Affirmed.

**BUTTLER, J.,** dissenting.

In this suit to quiet title, we review *de novo.* I do not agree that the plaintiff has established title by adverse possession by "clear and positive proof that he and his predecessors have had actual, open, notorious, exclusive, continuous and hostile possession for the full statutory period of ten years under claim of right or color of title." (41 Or App at 25.)

First, it must be understood that plaintiff's parents, from whom he acquired the property adjacent to (or surrounding) the ten acre parcels he now claims by adverse possession, did not claim title to those parcels in question by virtue of adverse possession, or otherwise. They were the ones, however, who cultivated the land or grazed cattle on it, and fenced it. After his father's death in 1965, plaintiff took over the operation of the ranch, and continued to do just as his parents had done, except that he contends that in continuing to cultivate all of the land within each of the sections in which the ten acre parcels in question are located, his intention was to claim title to those parcels.

The fact that the entire sections were fenced for over ten years, that is by plaintiff's parents, not by him, indicates absolutely nothing. It was the most economic way to fence the property admittedly owned by plaintiff, the alternative being to fence out each of the ten acre parcels. Equally insignificant is the posting of "no trespassing" signs on the outer perimeter of the section lines; without question, plaintiff was entitled to keep trespassers off of the property which he admittedly owned.

[28]

The *only* evidence, then, as to the necessary elements to support adverse possession come from plaintiff's testimony that he intended to claim title to each of the parcels in question against the world, even though neither his parents nor his brothers and sisters (from whom he acquired title to undivided interests in their parental property) had done so. As against that testimony plaintiff knew, as did his parents, that the record title to each of the parcels in question was in someone else and that the real property taxes were assessed and paid by the record owners. In *Reeves et al. v. Porta*, 173 Or 147, 156, 144 P2d 493 (1944), relied upon by the majority for the proposition that the failure of the claimant to pay taxes is not conclusive, the Supreme Court held that adverse possession had not been established. In doing so, it stated:

"During all the period of the alleged adverse possession by plaintiffs, taxes were levied regularly against the property, but they paid none of them. The record owners paid them. Failure to pay taxes is, in itself, evidence against the plaintiffs' claims. *Phipps v. Stancliff,* 118 Or. 32, 245 P. 508; *Looney v. Sears,* 94 Or. 690, 185 P. 925, 186 P. 548; *Holtzman v. Douglas,* 168 U. S. 278, 18 S. Ct. 65, 42 L. Ed. 466; *Todd v. Weed,* 84 Minn. 4, 86 N. W. 756. It is held generally that such failure is not conclusive against one claiming title by adverse possession, and this is the rule in Oregon. In a doubtful case, however, it may turn the scales against the claimant. *Looney v. Sears,* supra. The owner of property is bound to know that such property is subject to assessment for its proportional share of the public burdens. 'Ordinarily, a person pays taxes on that which he claims to own.' *Phipps v. Stancliff,* supra. The failure of one, claiming to hold land in adverse possession as against the legal owner, to have the land assessed to him and to pay the taxes thereon, particularly when he permits the legal owner to pay them, may be regarded as evidence of a furtive possession, or of a permissive one, or of a mere trespass. It is 'strong and forcible evidence that the possessor did not intend to claim title adversely to the owner', (*Todd v. Weed,* supra) and in this case the trial judge so considered it."

[29]

It seems to me that the most that can be said is that plaintiff continued doing what his parents had done, namely, use the islands of land surrounded by land owned by plaintiff's parents, and later plaintiff, as a matter of convenience and because no one objected. I would hold, as the Court did in *Reeves et al. v. Porta, supra*, that the failure of plaintiff to have the land assessed to him and to pay the taxes thereon, and knowingly permitting the legal owners to pay them, is strong evidence of a "furtive possession" and "strong and forcible evidence that the possessor did not intend to claim title adversely to the owner."

In each of the cases relied upon by the majority, except *Reeves*, the party claiming adverse possession at least thought, rightly or wrongly, that the property claimed was a part of his property.

For the foregoing reasons, I would reverse the judgment below, and therefore respectfully dissent.