Argued and submitted May 16, reversed and
remanded July 21, reconsideration denied August 26,
petition for review denied November 20, 1980 (290 Or 157)

# BREUER,
## *Respondent,*
## *v.*
# COVERT,
## *Appellant.*

## (No. 78-486, CA 14450)

614 P2d 1169

[225]

David A. Dorsey, Coos Bay, argued the cause for appellant. With him on the briefs were Richard L. Barron, and Bedingfield, Joelson, Gould & Barron, Coos Bay.

Bruce E. Wiegman, Myrtle Point, argued the cause for respondent. With him on the brief were F. C. Meldrum, Myrtle Point, and Maurice V. Engelnau, and Engelnau & Hogan, P. C., Coquille.

Before Richardson, Presiding Judge, and Thornton and Buttler, Judges.

BUTTLER, J.

## BUTTLER, J.

Defendant appeals from the judgment of the trial court awarding damages to plaintiff for timber trespass, and dismissing defendant's counterclaim seeking to establish his own title to the disputed property by adverse possession. We reverse.

Plaintiff and defendant are adjoining landowners in Coos County. The property line between the parties' land as deeded is a straight north-south line running for approximately one mile. The land involved in the dispute is forest and grazing land. Defendant bought his property in February, 1968, from one Albert Breuer, the cousin of plaintiff's now deceased husband, Paul Breuer. Paul and Albert Breuer had inherited their respective lands from a common ancestor.

There is a fence running along the approximate common boundary of the property for most of the length of that line. Near the northern end of the boundary, however, the fence veers to the east into plaintiff's land and then curves back around, north of defendant's land.

Defendant and his father, who originally bought the land with him, testified that Albert Breuer pointed out the fence as the property line of the land which he sold them. At the time he bought the land defendant also bought 35-45 head of cattle which were then on the land. He testified that the cattle were grazing on the property, including the portion between the fence and the true property line in the northern portion of the parcel, when he bought the land and that the cattle continued to graze on that land, including the disputed parcel, up to the time of trial.

There is no clear evidence as to when or by whom the fence which veers from the property line was put in, but it seems to be agreed that it probably was constructed by Albert Breuer (defendant's predecessor in interest) sometime during his ownership,

[227]

between 1944 and 1968. The manager of plaintiff's property testified that he assumed that Albert Breuer grazed cattle up to the fence, but that he had been unaware of the existence of the fence until the incident in 1974 which led to this litigation.

That incident involved defendant's cutting trees over to the fence in order to improve grazing on the northern portion of what he thought was his property. Trees were cut from about 2.7 acres of land which, according to the deed records, belonged to plaintiff. After plaintiff had a survey and timber cruise done in 1977, she filed this action for timber trespass in April, 1978, seeking treble damages for the trees cut by defendant.[1] Defendant based his defense upon ownership by adverse possession of the property from which the trees had been cut, and sought affirmatively to quiet title in himself. The parties stipulated that the action be tried as a suit in equity.

At the outset, plaintiff contends that there can be no review of the trial court's decision because the parties agreed that the trial judge could view the property involved and use what he saw as evidence. Plaintiff contends that the stipulation so made prevents this court, on *de novo* review, from considering all of the evidence which was before the trial court.

Plaintiff relies on *Rea v. Rea,* 195 Or 252, 245 P2d 884 (1952), in which the parties' agreement to an independent investigation by the trial court in a child custody case was held to have constituted a waiver of appellate review because the entire record was unavailable to the reviewing court. In that case, it is apparent that the trial court used information gained by the investigation as substantive evidence, whereas here the court's view of the premises permitted the court to understand better the testimony concerning

---

[1] The action was brought under ORS 105.810 seeking treble damages for removal of trees. The trial court, however, awarded only double damages pursuant to ORS 105.815 because the court found defendant had probable cause to believe he owned the land.

the fence line in relation to the lay of the land, which is confusing. For that fundamental reason, the situation presented here more closely resembles that in *Molalla Electric Co. v. Wheeler,* 79 Or 478, 154 P 686 (1916) and *Thompson Estate Co. v. Kamm,* 107 Or 61, 213 P 417 (1923)[2] in which a view by the trial judge of disputed property was held not to prevent *de novo* review on appeal. Although plaintiff argues that the parties stipulated that the trial court here could use the view as evidence, we do not find the agreement to have been so clear. The record indicates that the trial court was understandably confused about the lay of the land when he suggested that he view the property, and there is no reason to conclude that his viewing the property served any purpose other than to help him understand the evidence in the record. Without a clear expression of the intention to do so, we decline to find that a party has waived the opportunity to have the decision of the trial court reviewed on appeal.

■    Defendant contends that he established title to the disputed property in himself through adverse possession either through his own possession, or by tacking the possession of his predecessor, thereby precluding plaintiff's recovery for trespass. We need not consider whether defendant may tack the possession of his predecessor to establish the requisite period of adverse possession because we conclude that defendant established title through his own possession of the property for the statutory period.

■    One claiming title by adverse possession must show that his possession was "actual, open, notorious, hostile, continuous and exclusive, under claim of right or color of title, for a period of ten years." *Russell v. Gullett,* 285 Or 63, 65, 589 P2d 729 (1979); *Beaver v. Davis,* 275 Or 209, 211, 550 P2d 428 (1976). We conclude that defendant established those elements here: his use of the property was the use that would be expected of an owner under the circumstances. *See Lee*

---

[2] *See also Omlie et ux v. Hunt,* 211 Or 472, 316 P2d 528 (1957).

*v. Hansen,* 282 Or 371, 578 P2d 784 (1978); *Almond v. Anderegg,* 276 Or 1041, 557 P2d 220 (1976). Defendant grazed cattle, cut timber and hunted on the land. His son occasionally hiked and hunted on the land. There is no evidence that anyone other than defendant and his family used the disputed property after defendant purchased it in February, 1968. Defendant and his son testified that there were occasions when they helped Paul Breuer (plaintiff's deceased husband) get his sheep back on his property when they got through the fence.

5. Defendant testified that he was told by his seller that the fence marked the eastern boundary of the property and that he used the property under that assumption. The trial court specifically found that defendant believed the land to be his. It is now well established that the element of hostility of possession may be based upon a belief resulting from a "pure mistake" as to ownership. *Lee v. Hansen, supra; Norgard et al v. Busher et ux.,* 220 Or 297, 349 P2d 490 (1960). The evidence establishes that defendant believed the land to be his and that he had a basis for that belief based upon what he was told by his predecessor and upon that predecessor's use of the land.

The record also shows that defendant possessed the property for the required ten years prior to the commencement of this proceeding. He purchased the land in February, 1968. Suit was brought by plaintiff in April, 1978. Defendant remained in possession of the property until at least the time of trial. The requisite period to establish title by adverse possession had run before the commencement of the suit.[3] *Cf. Barrell v. Title Guarantee Co.,* 27 Or 77, 39 P 992 (1895).

[3] ORS 12.050 provides:

"An action for the recovery of real property, or for the recovery of the possession thereof, shall be commenced within 10 years. No action shall be maintained for such recovery unless it appear that the plaintiff, his ancestor, predecessor, or grantor was seized or possessed of the premises in question within 10 years before the commencement of the action."

■ Notwithstanding that fact, plaintiff contends that she may maintain this trespass action because the statute of limitation had not run as to that claim. The question is whether defendant may defend against a trespass which occurred in 1974 by showing title which did not mature until 1978.[4] We conclude that he may under the doctrine of relation back:

> "* * * the theory that once matured, the title relates back to the beginning of the prescriptive period. Under that theory it is presumed that the origin of the title was rightful, not wrongful, that the possession which has matured it was in support, not in derogation of the rightful title, and that he, who by a possession perfect in the law has matured a title, has in theory of law been the owner of the title from the beginning. * * *" *Counce v. Yount-Lee Oil Co.,* 87 F2d 572, 576 (5th Cir 1937).

The doctrine of relation back of title acquired by adverse possession has been recognized in other jurisdictions, although we have found no Oregon case applying it. *See Conlin v. Metzger,* 77 ND 620, 44 NW2d 617 (1950); *Davis v. Haines,* 349 Ill 622, 182 NE 718 (1932); *Bellefontaine Co. v. Niedringhaus,* 181 Ill 426, 55 NE 184, 72 AS 269 (1899); *and see* 3 Am Jur 2d Adverse Possession § 242 (1962).

In *Counce v. Yount-Lee Oil Co., supra,* it was held that the record title holder could not recover for oil removed from adversely possessed property during the limitation period. There the court pointed out, and we believe correctly, that if such recovery were possible

> "* * * every owner of land who has lost his title by prescription or limitation would have a personal action against the prescriber, for oil, timber, or other things, taken from the land, within the limitation period for personal actions. * * *" *Counce v. Yount-Lee Oil Co.,* 87 F2d at 575.

---

[4] It is in the context of this apparent dilemma that defendant contends he may tack his predecessor's use of the property, which could mature defendant's title prior to the timber trespass. Our disposition of this issue renders the tacking question moot.

*See also Ogletree v. Evans,* 248 SW2d 804 (Tex Civ App 1952). When it is considered that each act comprising the elements of adverse possession constitutes a trespass, the relation back doctrine is necessary to put an end to a dispute over the ownership of real property, which includes the standing timber thereon.

We conclude that defendant established by adverse possession title to the disputed property which matured as of February, 1978. Plaintiff is precluded from recovering for the removal of the timber which occurred in 1974 because her action was not brought until April, 1978, after defendant's title had matured.

Reversed and remanded for the entry of a decree quieting title in defendant.