Argued and submitted April 17, affirmed June 29, 1981

# WHITE et al,
*Respondents,*

*v.*

# CHANDLER,
*Appellant.*

## (No. 8807, CA 18709)

630 P2d 372

Robert S. Hamilton, Klamath Falls, argued the cause and filed the brief for appellant.

Bobby S. Mink, Salem, argued the cause for respondents. With him on the brief was Mink & Najewicz, Salem.

Before Buttler, Presiding Judge, and Warden and Warren, Judges.

BUTTLER, P. J.

**BUTTLER, P. J.**

Plaintiffs brought this quiet title action; defendant counterclaimed, asserting title to the real property by adverse possession. Defendant appeals from the decree quieting title in plaintiffs. We review *de novo* and affirm.

Plaintiffs, brother and sister, are record owners of approximately ten acres of real property located in Lake County. The parcel has been owned by them or their family since the early part of the century, and plaintiffs have receipts for property tax payments for the last 50 years. Plaintiffs inherited the parcel from their father, who died in 1972. They reside in California and, until trial in this case, had never visited the parcel or, at least, they have no recollection of having done so.

Defendant testified that he has grazed cattle on the property in the spring and early summer yearly, since the 1940's. Defendant owns 180 acres of land, mostly covered with sagebrush and some grass, which immediately adjoins the property on three sides. On the fourth side, the parcel is bounded by a fence separating it from a highway. Apart from the fence along the road, none of the property is fenced. Defendant's cattle are free to roam over the 190 acres, and they use the parcel, which lies on a hill or ridge, as one of their main bedding grounds. Defendant further testified that on at least one occasion he cultivated the parcel by scattering grass seed.

Plaintiffs contend that in 1972, or perhaps earlier, defendant was given verbal permission from plaintiffs' father to graze cattle on the parcel. Plaintiff Robert L. White, (hereinafter plaintiff) testified at trial as follows concerning a phone call which he made to defendant in 1979:

> "I introduced myself to [defendant] and told him of my father's death and told him also of my mother's death at the time. And said I was concerned about the property and that I knew that my dad had been there on one or more occasions giving permission to use that property. And I said as far as my information is concerned it was in the early part of '72, prior to his passing away and that he had given verbal permission. *[Defendant], at that time, said I thought it was before that* and I said, well, as far as I know it was in 1972. And I reiterated the fact - *I said you realize this was verbal permission and he agreed to that at the*

*time.* I said what I wanted to do was to get this into written, to a written document. There would be no charge for the use of the land, but I wanted to change it this way. That was basically it. He said o.k. send me the document. He did not agree to sign it. He said send me the document, of which it was *[sic]* transmitted to him, denied and returned to me." (Emphasis supplied.)

Defendant admitted at trial he received the phone call from plaintiff, but denied that he agreed he ever had verbal permission to use the parcel. He claimed that the call awakened him at night and that he was half asleep; he did not then inform plaintiff that he claimed ownership of, or was adversely possessing, the parcel. He did recall telling plaintiff he would look at the written document. Defendant also admitted at trial to having offered to buy the property from plaintiffs' father in the early 1960's; that was the only time defendant claims to have talked with plaintiffs' father. Defendant testified that he has never paid the taxes on the parcel because plaintiffs got the notices and paid the taxes. At trial, defendant did not testify that he owned the ten acre parcel or that he had used it as if it were his own property.[1]

After defendant returned, unsigned, the written document, which was a license agreement terminable at will, plaintiffs brought this action. The trial court entered a decree quieting title in plaintiffs. Finding that defendant had not met his burden of proof to establish title by adverse possession, the court noted that (1) the record owners were non-residents, (2) taxes had been paid by the record title holder with defendant's knowledge and (3) the evidence as to the nature and extent of adverse possession was meager.

■ In order to establish title by adverse possession, defendant must show by clear and positive proof that he has had actual, open, notorious, exclusive, continuous and hostile possession of the premises for the statutory period of ten years under claim of right or color of title. *Russell v. Gullett, 285* Or 63, 65, 589 P2d 729 (1979); *Beaver v. Davis,* 275 Or 209, 211, 550 P2d 428 (1976).

■ The trial court here made no finding on the credibility of either plaintiff or defendant, both of whom

---

[1] In an affidavit filed in opposition to plaintiffs' motion for summary judgment, defendant did assert that he had used the ten acre parcel as if it were his own. But that affidavit is not a part of the evidence adduced at trial.

testified at trial. We draw our own conclusions from the whole record. Defendant's offer to buy the parcel in the early 1960's is inconsistent with any claim of ownership or adverse possession prior to that time. Thus, defendant's burden is to prove adverse possession *thereafter.* We find plaintiff's testimony relating to his telephone conversation with defendant in 1979 to be more credible than defendant's account. Defendant admitted in that conversation that sometime prior to 1972 he was given verbal permission by plaintiffs' father to graze cattle on the property. Defendant has not identified any period between "the early 60's" and whenever he was given permission to use the land prior to 1972 which would satisfy the ten-year requirement for adverse possession.

As far as the record shows, not only did defendant fail to communicate his adverse claim whenever permission was given, defendant thereafter did nothing to communicate to plaintiffs or to anyone else that his use had become hostile. The first act which might be characterized as "hostile," on the basis of this record, occurred in 1979 when defendant returned unsigned the proposed license agreement which plaintiff sent to him. That was the first act which could have triggered the running of the requisite ten-year period under the statute of limitations to establish title by adverse possession. *See* ORS 12.050; *Breuer v. Covert,* 47 Or App 225, 230, 614 P2d 1169, *rev den* (1980).

■ Defendant admitted he was aware that plaintiffs or their parents received property tax notices and paid the taxes on the ten acre parcel. We take that to be an awareness throughout the relevant times that plaintiffs or their parents were record owners of the parcel. Failure to pay taxes, although not necessarily conclusive, is evidence that the possessor did not intend to claim title adversely to the owner. *Reeves et al v. Porta,* 173 Or 147, 156-7, 144 P2d 493 (1944). In *Reeves,* the Supreme Court held that plaintiffs had not proved their claim of title by adverse possession as against the record owners. The court said:

> "During all the period of the alleged adverse possession by plaintiffs, taxes were levied regularly against the property, but they paid none of them. The record owners paid them. Failure to pay taxes is, in itself, evidence against the plaintiffs' claims. *Phipps v. Stancliff,* 118 Or. 32, 245 P. 508; *Looney v. Sears,* 94 Or. 690, 185 P. 925, 186 P. 548;

*Holtzman v. Douglas,* 168 U.S. 278, 18 S. Ct. 65, 42 L. Ed. 466; *Todd v. Weed,* 84 Minn. 4, 86 N.W. 756. It is held generally that such failure is not conclusive against one claiming title by adverse possession, and this is the rule in Oregon. In a doubtful case, however, it may turn the scales against the claimant. *Looney v. Sears,* supra. *The owner of property is bound to know that such property is subject to assessment for its proportional share of the public burdens. 'Ordinarily, a person pays taxes on that which he claims to own.' Phipps v. Stancliff, supra. The failure of one, claiming to hold land in adverse possession as against the legal owner, to have the land assessed to him and to pay the taxes thereon, particularly when he permits the legal owner to pay them, may be regarded as evidence of a furtive possession, or of a permissive one, or of a mere trespass. It is 'strong and forcible evidence that the possessor did not intend to claim title adversely to the owner', (Todd v. Weed, supra,* and in this case the trial judge so considered it." (Emphasis supplied.)

Under all of the facts and circumstances of this case, we find defendant's having knowingly permitted the record owners to pay the taxes on the parcel in dispute is strong evidence that he was using the property either "furtively" or with permission rather than under a claim of right adverse to the owner.

In *Garrett v. Lundgren,* 41 Or App 23, 27, 596 P2d 1318, *rev den* (1979), we held that failure to pay taxes was not determinative of the adverse possessor's claim of right. In that case, however, a majority of the sitting judges concluded that the adverse claimant occupied and used the disputed parcels under a claim of right for ten continuous years, that the entire property, including that adversely claimed, was fenced and posted against trespassers, and that the claimant would have evicted the record owners if they had attempted to use the parcels at any time. The failure to pay taxes, the majority held, did not outweigh the other factors, none of which appear here.[2]

We conclude that the trial court here properly quieted title in plaintiffs.

Affirmed.

---

[2] The author of this opinion would limit *Garrett* strictly to the facts as found by the majority opinion in that case.