Argued and submitted February 19, reversed and remanded for entry of judgment quieting title in Just-A-Mere Farm, Inc., December 9, 2009

## Lloyd H. PELLHAM,
*Plaintiff-Respondent,*

*v.*

## Robert C. SKEANS,
Deceased,
*Defendant,*

*and*

## JUST-A-MERE FARM, INC.,
*Defendant-Appellant.*

Columbia County Circuit Court
042063; A134655

222 P3d 43

John Dudrey argued the cause for appellant. With him on the briefs were Michael D. Williams and Williams Fredrickson, LLC.

John P. Salisbury argued the cause for respondent. With him on the brief was Salisbury & Callahan, LLP.

Before Haselton, Presiding Judge, and Armstrong, Judge, and Rosenblum, Judge.

ARMSTRONG, J.

## ARMSTRONG, J.

Defendant Just-A-Mere Farm, Inc., appeals a judgment quieting title to a disputed strip of timberland in plaintiff and dismissing defendant's adverse possession and quiet title counterclaims involving the same land.[1] On appeal, defendant advances two assignments of error that raise the same legal issue: whether the trial court erred in concluding that defendant failed to prove the hostility element of its counterclaim for adverse possession.[2] We reverse.

We find the following facts on *de novo* review, ORS 19.415(3) (2007),[3] by clear and convincing evidence. *Hoffman v. Freeman Land and Timber, LLC.*, 329 Or 554, 559, 994 P2d 106 (1999). The land in dispute is a 2.12-acre strip of land, roughly wedge-shaped, approximately one-half mile long, and eight to 10 feet wide on the west end and 50 feet wide on the east end. The record owner of the disputed land is plaintiff, who owns the property to the north of the disputed land. A fence on plaintiff's property forms the northern border of the disputed strip. Just-A-Mere Farm owns the property to the south of the disputed land. The survey line between plaintiff's and defendant's properties forms the southern border of the disputed land.

As relevant here, the disputed land was originally owned by Corbin Pellham, plaintiff's grandfather. The fence

---

[1] Plaintiff alleged a claim for timber trespass against defendants Just-A-Mere Farm, Inc., and Robert Skeans, a shareholder and vice-president of Just-A-Mere Farm; and a quiet title claim against Just-A-Mere Farm. Just-A-Mere Farm, in turn, alleged counterclaims for adverse possession and to quiet title. Plaintiff's timber trespass claim was dismissed by stipulation, so the claims that were tried were claims between plaintiff and Just-A-Mere Farm. Accordingly, references to defendant in this opinion are to Just-A-Mere Farm.

[2] Defendant brought a common-law claim for adverse possession. In 1989, the legislature enacted ORS 105.620, codifying the common law on adverse possession and adding a requirement that the party claiming adverse possession must have had an honest belief of actual ownership when that party entered into possession. Or Laws 1989, ch 1069, § 2. ORS 105.620 applies to adverse possession claims vesting after January 1, 1990. *Id.* § 4. Here, defendant's claim vested before that date, and, accordingly, our discussion throughout concerns a common-law claim for adverse possession.

[3] ORS 19.415 was amended by Senate Bill (SB) 262 (2009). Or Laws 2009, ch 231, §§ 2-3. The amendments apply to appeals in which the notice of appeal was filed on or after June 4, 2009. Because the notice of appeal in this case was filed before that date, we apply the 2007 version of ORS 19.415.

in question is straight, and was either built by Corbin, or by Corbin's predecessor, and has been at its present location since at least the 1950s. Lonnie and Joan Pellham, plaintiff's uncle and aunt, owned the land from 1977 to 1994. Between 1979 and 1986, Lonnie rebuilt the fence in its same location. The Pellhams kept cattle on their property. They explained that the main purpose of the fence was to keep the cattle on their property and that its location was one of convenience, because building the fence on the property line would have been impossible due to the location of trees and tree roots. Plaintiff purchased the property in 1994.

In 1964, Just-A-Mere Farm purchased 40 acres of land directly south of plaintiff's property from Wengert. Before then, from 1955 to 1964, Robert Skeans, who was vice-president and a shareholder of Just-A-Mere Farm at the time that plaintiff commenced this action, mowed, raked, and bailed hay for Wengert and worked up to the fence line.

In 1965, defendant logged several trees from its property and the disputed land. Defendant thereafter planted Christmas trees on its property and on the disputed land, up to within a few feet of the fence line. Defendant engaged in the standard practice of raising Christmas trees, which required spraying and rototilling the ground around the trees when they were small, and then mowing between the trees twice per year. In 1974 or 1975, defendant hired workers to shape the trees with machete-like Christmas tree knives, as is common practice in Christmas tree farming.

Around 1975 or 1977, defendant determined that the soil in which it had planted the Christmas trees was unsuitable for growing them. Consequently, it cut and sold every other row of trees and let the remaining trees grow for eventual harvest as timber. Thereafter, defendant's share-holders or employees walked or drove through the area two or three times a year to look for and remove dead or fallen trees.

Lonnie Pellham removed a number of trees from his property in 1992 or 1993, but he did not remove trees from the disputed land south of the fence line.

In 1982, Everett Skeans, Robert's father, had Just-A-Mere Farm's various properties surveyed, including the 40-acre parcel south of plaintiff's property. Although that survey showed the correct property line between plaintiff's and defendant's property, it did not show the fence line in relation to the property line.

In 1996, defendant logged alder from its property, as well as some trees from the disputed land. In 1998, defendant logged some alder and scrub fir from the west end of its property and logged the disputed land up to the fence line. Neither plaintiff nor his predecessors noticed any of that activity.

Plaintiff and his predecessors contend that they knew as early as 1962 that the fence was not on the property line. After the 1962 Columbus Day storm, Corbin Pellham removed a couple of downed trees from south of the fence line and walked the property line with a compass, putting stakes in the ground to establish a property line. Lonnie Pellham testified that he realized that the fence line was not the property line after Just-A-Mere Farm's 1982 survey, when he saw the location of orange-painted markers from the survey. When Lonnie transferred the property to Lloyd in 1994, he told Lloyd that the fence line was not the property line. Throughout the entire period, plaintiff's only use of the strip involved removing a few Christmas trees in three different years in the late 1960s and removing a few dead trees for firewood. Plaintiff never saw evidence of logging in the disputed area even though he walked the fence line every spring, and he did not speak to the Skeanses about the property line until 2001.

In August 2001, plaintiff told Randy Skeans, Robert's son and a shareholder of defendant, that defendant "had gotten across the line and logged some timber that belonged to me." Before that conversation, none of the individuals associated with defendant believed other than that the fence line was the property line.

Robert Skeans testified that, between 1964 and 2000, he never saw anyone other than defendant's shareholders and employees working on the disputed land, nor did he see any evidence that work had been done in that area by anyone else. Robert Skeans never discussed the location of

the property line with the Pellhams, and both families worked the land up to the fence line.

As a professional logger, Robert Skeans typically locates survey markers before commencing logging, or he logs in an area where the landowner has already marked the survey lines. Here, in contrast, he did not locate the survey markers when he logged, which would have disclosed that the fence line was not the true property line, because "when you go fifty years, forty years, you go by the fence and your own property."

■ To establish ownership by adverse possession, the party asserting such a claim must prove by clear and convincing evidence that, for a 10-year period, the party or its predecessors maintained actual, open, notorious, exclusive, hostile, and continuous possession of the property. *See, e. g.*, *Hoffman*, 329 Or at 559. The trial court concluded that defendant had established all elements of its adverse possession claim save one—hostility:

> "This Court has absolutely no doubt that Defendant Just-A-Mere Farm[ ] has proved the following elements by more than clear and convincing evidence. That is, Just-A-Mere Farm's use of the property was actual, open, notorious, exclusive and continuous for well over the necessary ten (10) year period.

> "Just-A-Mere Farm[ ] treated the fence line as the property line from the time [it] acquired it in 1964. [Its] removal of brush and the replanting of trees at the west end of the property and earlier the planting of Christmas trees and subsequent conversion to timber trees in the middle of the property clearly indicates [its] open, notorious, continuous, actual use of the property for the raising of trees as any other person would have done in that occupation for that use of the property.

> "* * * * *

> "The Court finds that [*Hoffman*, 329 Or 554], is [controlling]. Therein, the Oregon Supreme Court spends a great deal of time defining the necessary element of 'hostility,' stating that hostility means the adverse possessor must be claiming the property under 'claim of right' or 'claim of ownership.'

"Unfortunately, this Court is not convinced, by clear and convincing evidence that the Defendant[ ] ha[s] in fact treated the property under claim of right because, as stated earlier[,] [it has] simply always assumed the fence line was the property line. There has apparently never been any conversation, that this Court believes, to assert right, title and ownership over the disputed property against the Pellham[s]. Just-A-Mere Farm[ ], the Skeans[es], simply always assumed the property was theirs and treated it that way. Since there is no presumption of hostility and [it has] done nothing to advise the Pellham family of [its] intent to posses[s] the property, the Court **reluctantly** comes to the conclusion [that Defendant's] claim for adverse possession fails."

(Boldface and underscore in original.)

██ In concluding that defendant had failed to prove hostility, the court assumed that defendant was required to communicate to plaintiff or his predecessors its intention to treat the disputed land as its own. Defendant contends that the court erred in its understanding that defendant's mistaken belief of ownership was insufficient to establish hostility. On appeal, we agree that the trial court erred. Hostility can be established by a purely mistaken belief of ownership, and reliance on a fence line may be sufficient to establish that belief. "However, the significance of a fence and its state of repair in any particular case depends on the character of the land and what the fence communicates to others about the possession of the disputed property." *Nooteboom v. Bulson*, 153 Or App 361, 365, 956 P2d 1042, *rev den*, 327 Or 431 (1998).

In *Breuer v. Covert*, 47 Or App 225, 614 P2d 1169, *rev den*, 290 Or 157 (1980), for example, we considered whether a party's reliance on a fence line as the property line established "pure mistake." In that case, the fence ran approximately along the common boundary between the plaintiff's and the defendant's property but, at one point, veered to the east onto the plaintiff's land and then curved back around, north of the defendant's land. The defendant had been told by the previous landowner that the fence line was the property line. The irregular jog in the fence line resulted in a 2.7-acre parcel that was owned by the plaintiff but located on the

defendant's side of the fence line. Notwithstanding the irregular fence line, we found that the defendant had established pure mistake because he "believed the land to be his and * * * he had a basis for that belief based upon what he was told by his predecessor and upon that predecessor's use of the land." *Id.* at 230.

In contrast, in *Mid-Valley Resources, Inc. v. Engelson*, 170 Or App 255, 13 P3d 118 (2000), *rev den*, 332 Or 137 (2001), one defendant testified that, as a child living on the property, she did not know where the boundary line to her parent's property was. Also, when asked whether a fence along the western edge of her parents' property formed the boundary line, she answered that she did not know. We concluded that the defendants had failed to establish pure mistake and that, because one of them "was in doubt as to the location of the true line, [the] defendants cannot rely on the pure mistake doctrine to satisfy the requirement of hostility." *Id.* at 261.

Here, all of the individuals associated with defendant believed that the fence line was the boundary between defendant's property and plaintiff's property. The Skeanses have always assumed that the fence line was the property line. When Robert Skeans mowed, raked, and bailed hay for Wengert, he worked up to the fence line. Defendant planted and cultivated Christmas trees, thinned trees, and logged in the disputed strip; those are not clandestine activities that leave no trace, and their activities on the disputed land are consistent with the activities of a landowner that believes it owns the land. Additionally, as a professional logger, Robert Skeans would typically locate survey markers before beginning to log. That he did not do so when logging the disputed strip demonstrates his reliance on the fence as the property line, and his lack of doubt as to the location of the property line.

Plaintiff presented evidence suggesting that *he* (and his predecessors) knew that the fence line was not the property line. However, they did not communicate that belief to defendant nor challenge defendant's activities on the disputed land. Furthermore, they did not conduct activity in the strip sufficient to have given defendant cause to question the

belief that it owned the disputed land. In all events, it is *defendant's* mistaken belief of ownership that is relevant to a claim for adverse possession, and, here, defendant has established the hostility requirement based on mistaken belief of ownership. The trial court erred in reaching its contrary conclusion.

■■ Plaintiff nonetheless contends that we should affirm the trial court's judgment by finding, on *de novo* review, that defendant failed to prove the continuity and exclusivity elements of its adverse possession claim. "Whether use has been continuous depends on the kind of land involved." *Schoeller v. Kulawiak*, 118 Or App 524, 529, 848 P2d 619, *rev den*, 317 Or 272 (1993). Here, the land in question is timberland. Defendant planted, tilled, sprayed, sheared, and thinned Christmas trees. After determining that the land was not suitable for growing Christmas trees, defendant removed every other row of trees and let the remaining trees mature into timber. Consistently with that use, defendant's shareholders and employees regularly walked or drove through the land and removed dead or fallen trees. Likewise, defendant logged part of the disputed land in 1996 and 1998. That use is consistent with the character of the land as timberland, and, accordingly, we agree with the trial court that defendant proved its continuous possession of the land.

■ Additionally, we find that defendant proved its exclusive possession of the disputed land. Plaintiff's only use of the disputed land was removing a few Christmas trees in three different years in the late 1960s and removing a few dead trees for firewood, an activity that is undated. The sum of plaintiff's activity involving the disputed land is minor and does not refute defendant's exclusive possession of the land.

On *de novo* review, we agree with the trial court that defendant also established actual and open possession. Thus, defendant has established all of the elements of its claim of adverse possession of the disputed land for the necessary 10-year period. It follows that defendant is entitled to a judgment quieting title to the disputed property in it.

Reversed and remanded for entry of judgment quieting title in Just-A-Mere Farm, Inc.